CUNNINGHAM *v.* O'CONNOR.

1. CONTRACT OF SALE—DELIVERY—TRANSFER OF TITLE.
   Where plaintiff, a creditor of J., orally agreed to buy of J. his
   small field of beans, about to be harvested, and, after his
   account should be paid, to turn over the surplus, if any, to J.,
   and then made an arrangement with J. and another to har-
   vest the beans and store them in a barn, which was done, the
   transaction constituted a completed sale.

2. CONVERSION—VALUE—QUESTION FOR JURY.
   In an action for the conversion of a quantity of beans, where
   there was evidence of the quantity, condition, and of actual
   sales, it was sufficient to submit the question of value to the
   jury.

3. TORTS—JUSTICE'S COURT—JOINT DEFENDANTS—APPEAL.
   In an action of tort brought in justice's court against two de-
   fendants, a verdict and judgment on appeal in favor of one
   defendant does not operate to discharge the other. So *held*
   of an action of trover.

Error to Sanilac; Beach, J. Submitted February 4,
1904. (Docket No. 78.) Decided April 5, 1904.

Trover by Peter Cunningham against John O'Connor,
impleaded with the Truman Moss State Bank. From a
judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff brought suit in trover in justice's court against
the defendant and the Truman Moss State Bank for the
conversion of a quantity of beans, and recovered. Upon
an appeal to the circuit court he obtained a verdict for
$49.50, which the court afterwards reduced to $24.75, and
entered a judgment therefor. The circuit court directed
a verdict in favor of the bank; held that defendant O'Con-
nor was liable, and left the question of damages to the
jury.

Plaintiff claims title by a verbal sale. Defendant
claims title by a chattel mortgage executed to the bank.

The beans belonged to one Watson, who was indebted to plaintiff. One Jenereaux became security for the debt of Watson. Plaintiff extended afterwards further credit to both Watson and Jenereaux, until the two accounts amounted to $57.56. Watson had a small field of beans. Watson left the country, and sold and turned the beans over to Jenereaux, to be used in payment of his debt to plaintiff. The beans were ready for harvest, and the harvest had begun, when plaintiff saw Jenereaux and purchased them, as he claims. Plaintiff testified that after some negotiations with Jenereaux as to price, etc., "I said to him: 'I will buy these beans in this way: That after my account is paid, with costs, I will give it to you.' He said, 'All right.'" By this it was evidently meant that, if the beans brought more than $57.56 and costs of harvesting and marketing, the surplus was to be paid by Cunningham to Jenereaux. They called a witness to the agreement, who stated: "They stated the bargain. He [Cunningham] was to have all the beans that grew on Watson's place for a store bill that Watson owed and Jenereaux both." Seven days after this transaction, Jenereaux executed a chattel mortgage upon this and other property to secure his debt to the bank. Plaintiff made an arrangement with Jenereaux and one Rowley to harvest and store the beans in a barn. This was done. Defendant O'Connor then seized them as the agent of the bank under the chattel mortgage, and sold them. The court directed a verdict for the plaintiff for the value of the beans, holding that the evidence showed a completed sale.

C. F. Gates and A. A. Meeker, for appellant.

R. J. West, for appellee.

GRANT, J. (after stating the facts). 1. Defendant claims that the transaction between plaintiff and Jenereaux was not a sale, but only a mortgage, and, not being recorded, is of no force as against the subsequent chattel

mortgage. There is no dispute as to the facts. The question, therefore, becomes one of law. We think the direction of the court is correct, under *Colwell* v. *Keystone Iron Co.*, 36 Mich. 51; *Webster* v. *Anderson*, 42 Mich. 554 (4 N. W. 288, 36 Am. Rep. 452).

2. It is urged that, when the plaintiff rested his case, he had introduced no evidence of the value of the property. The beans were seized either the latter part of October or in November,—the exact date is not shown by the record. This suit was tried in the circuit court the 8th of January following. Plaintiff did not see the beans after they were threshed. It was impossible, therefore, for him to give their exact condition and value. A witness who drew them from the farm said he shelled some of them, and they were nice and white. One witness testified that he sold beans that fall, for a dollar a bushel, not as good as the Watson beans. It is true that the court struck out the testimony of this witness as to what he received, but it does not appear that he struck out all his testimony. Witnesses may base their opinions of value on actual sales of which they have knowledge. *Thompson* v. *Moiles*, 46 Mich. 42 (8 N. W. 577). Plaintiff testified that, at the time of the trial, he was selling beans for 3 cents a pound. Defendant testified that there were 66 bushels of the beans; that one man offered him 50 cents a hundred pounds, and another 30 cents a bushel. This included the beans belonging to Jenereaux, as well as those which were raised by Watson. The court instructed the jury that the testimony as to the value was somewhat vague and indefinite, but that from all the testimony as to the value, quantity, condition, etc., they must determine, to the best of their judgment, the value. We think the evidence was sufficient to submit to the jury.

3. Counsel for the defendant insist that the discharge of the defendant bank also operated to discharge the defendant O'Connor, under *Wright* v. *Reinelt*, 118 Mich. 638 (77 N. W. 246). This is an action of tort, and in justice's court, and in circuit court upon appeal, judgment

could pass against either. That case has no application to actions of tort.

Judgment affirmed.

The other Justices concurred.