CLINE *v.* DANIELS.

1. REFORMATION OF INSTRUMENTS—LAKEFRONT LOTS—ROCK GARDEN.
    Record in suit for reformation of deed to 2 of 3 lakefront lots theretofore owned by defendants *held,* to establish that plaintiffs intended to buy and defendants intended to sell to the outermost edge of rock garden which encroached on the third lot.

2. SAME—MUTUAL MISTAKE—ROCK GARDEN—INTENT TO INCLUDE ENCROACHMENT.
    Deed of 2 of 3 lakefront lots is reformed on ground of mutual mistake to include 1–1/2 feet of third lot for its entire length, where record shows parties intended to include rock garden which encroached by such distance onto third lot.

Appeal from Berrien; Robinson (Thomas N.), J. Submitted June 12, 1956. (Docket No. 53, Calendar No. 46,692.) Decided September 4, 1956.

Bill by Melvin H. Cline and Alexandria L. Cline against Albert Daniels and Sarah Daniels to reform

———

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 45 Am Jur, Reformation of Instruments §§ 55, 56.

deed to include landscaped area adjacent to house. Decree for plaintiffs. Defendants appeal. Affirmed.

*Butzbaugh, Page & Byrns,* for plaintiffs.

*Harvey, Fisher & Troff,* for defendants.

BLACK, J.   This bill, filed in the Berrien circuit to reform the description set forth in a warranty deed executed by defendants in favor of plaintiffs, resulted in a decree for plaintiffs.   Defendants have appealed.

In 1923, the defendants, Albert Daniels and Sarah Daniels, acquired 3 platted lots situated on the southwesterly side of Paw Paw lake in Berrien county. The lots, as platted, are 40 feet in width (fronting on the lake) by 152 feet in depth, and they are known in the record as lots 64, 65 and 66.   Lot 64 is the southeasternmost lot.   It lies contiguous to the center lot, which is lot 65.   Lot 66 is the northwesternmost lot.

A fairly large residence facing the lake was constructed many years ago on lots 65 and 66.   A smaller guest house was later constructed on lot 64.   The entire premises were continuously occupied by defendants without separation either as to title or use, and such was the situation when the negotiations and sale presently described took place.   Exhibits sent here according to court rule, photographic and otherwise, disclose that the 3 lots were handsomely landscaped by defendants and that a subterranean sprinkling system, known as "Muellermist," was installed some 20 years ago for the purpose of uniform watering of the entire premises.   The exhibits disclose further that elaborate flagstone walkways through and around all 3 lots had been installed by defendants and that a sizable and obviously well-

kept rock garden had been constructed adjacent to and around the residence so situated on lots 65 and 66. The rock garden was elevated above grade and extended along the southeasterly side of the residence, thus bringing it in close proximity to the platted boundary between lots 64 and 65. This last fact points up the justiciable issue we have before us.

It is clear that the rock garden, as constructed and maintained, did encroach some 18 inches into and over lot 64, and it is just as clear that no one of the present parties was aware of the fact of such encroachment until after transfer of title as presently mentioned took place and the parties became "neighbors."

In early 1945 defendants were desirous of selling the residence so situated on aforesaid lots 65 and 66. They engaged the Pitcher Real Estate Agency of Coloma for that purpose, and the latter proceeded to list the mentioned residence for sale. When plaintiffs (Melvin H. Cline and Alexandria L. Cline), as prospective buyers, got in touch with the agency they were sent a prepared circular describing the premises to be sold, the heading of which reads as follows:

"For Sale: Paw Paw Lake residence completely furnished, beautifully landscaped rock garden on 80 x 150 ft lake-front lot."

The Pitcher agency thereafter and excepting as presently noted handled all of the negotiations and details leading up to the sale disclosed by such warranty deed. The initial instrument executed by the parties was the usual form of offer to purchase signed by Mr. and Mrs. Cline and accepted by Mr. and Mrs. Daniels, and it bears date of May 6, 1945. The form contains this wording, which wording was later lined out by apparent agreement of parties: "You are to locate boundary stakes to said property or have same surveyed." Mr. Cline relevantly testi-

fied, and his testimony in such respect is neither dis-
puted nor discredited, as follows:

"There was one sentence here that Mrs. Daniels
objected to, that sentence was: 'You are to locate
boundary stakes to said property or have same sur-
veyed.' She said that really wasn't necessary. We
were going to be friendly neighbors living next to
them and she saw no reason to go to this bother and
trouble. Thereafter that sentence was stricken out
in ink. I don't know who actually struck it out but
it was not stricken before I read it and was stricken
before I signed it."

The trial judge found, and the record fully and
persuasively supports his finding, that the plaintiffs
bought the residence property as listed on strength
of representation of the Pitcher agency that the line
dividing the southeasterly side of lot 65 from the
northwesterly side of lot 64 was clear of the outer-
most portion of such rock garden and that the rock
garden "went in the sale." Purchase by plaintiffs
from defendants of the identified residence property
was duly agreed to and the previously-mentioned
warranty deed, reformation of which is sought here
by plaintiffs, was utilized in fulfillment of title trans-
fer. The deed describes the premises sold as lots 65
and 66, and it was executed May 25, 1945, followed by
recording under date of May 28, 1945. The deal was
for cash.

Plaintiffs assumed immediate possession of the
premises transferred by the deed. Defendants there-
after occupied the guest house and that part of lot
64 standing clear of the rock garden. Some time
later, and after the new "neighbors" commenced the
experience of neighbor trouble, Mr. and Mrs. Daniels
caused the line between lots 64 and 65 to be surveyed.
The survey, made "about 1950," disclosed the fact
and extent of encroachment of the rock garden from

lot 65 over lot 64. Shortly after the survey was made Mr. and Mrs. Daniels caused the encroaching portion of the rock garden to be removed and thereupon constructed what is commonly known as a cyclone fence on the true line between lots 64 and 65, extending from street line to a point near the lake edge.

The only point of law urged on appeal is that the aforesaid representations of the Pitcher agency are not binding on the defendant sellers in the absence of evidence that the sellers authorized the representations or, knowing that they were made, remained silent. Counsel recognize that the rule is otherwise in cases of relief sought on the ground of fraudulent representations, but insist that this is a simple bill for reformation based on mutual mistake. Their contention, that they are not bound to make good the Pitcher representations, is based on that distinction.

There is no occasion to determine legal and equitable worth of the distinction and point made thereon since we are satisfied, as was the trial judge, that all parties understood at the time of negotiation and sale that the entire rock garden was a part of the platted lots described in the deed and that the then unsurveyed boundary was clear thereof. The circular by which the premises were offered for sale by the Pitcher agency with full authority of defendants; its reference to the "beautifully landscaped rock garden;" the physical appearance of the premises as photographed before and after construction of the fence, and the manner in which the neighbors treated and maintained the respective premises until trouble arose, are overwhelmingly persuasive that the chancellor reached the right result by force of accepted rules governing reformation on proof of mutual mistake.

We hold with the chancellor that the record establishes plaintiffs intended to buy and defendants

intended to sell 2 lots bounded southeasterly by a lot line intersecting the outermost edge of the rock garden, and that equity should and therefore will make their mutual intention good by force of her first and foremost maxim.

Defendants' counsel contend, if mutual mistake is found, that reformation should be limited in scope to the irregularly shaped portion of lot 64 constituting the actual encroachment. We will simply say that such a decree would create more rather than less trouble for these contending parties and it would do the same to their successors and assigns. The result of such a decree would be a boundary made up, in part, of a circuitous and twisted line, and such does not appeal either to equity or sense. These parties understood that the intended line between property sold and property retained would be straight and parallel with adjacent lot lines. The chancellor was consequently right in decreeing that a lot-long parallel strip, 1-1/2 feet wide and taken off the northwesterly side of lot 64, should become a part of lot 65 by reformation of the deed.

Affirmed, with costs to plaintiffs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, BOYLES, KELLY, and CARR, JJ., concurred.