BLOUGH *v.* STEFFENS.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—FINDINGS OF TRIAL COURT.
   The Supreme Court hears a chancery appeal *de novo* on the record but gives great weight to the findings of fact of the trial court.

2. CROPS—CORN—ORAL RESERVATION.
   Evidence adduced in suit to enjoin defendant purchaser of farm from interfering with share-cropping arrangement between vendor and plaintiff *held*, to justify finding that there was an oral reservation of the corn crop entered into prior to the sale of the farm.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 814, 815.
[2, 3] 15 Am Jur, Crops § 13.
[4, 5] 15 Am Jur, Crops § 6.
[6] 19 Am Jur, Equity §§ 326, 331.

3. Same—Conveyance—Reservation.

The common-law rule that growing crops pass with the title to the land upon a conveyance thereof in fee by one who owns both the crops and the land assumes the absence of a reservation of the crops, a reservation which may be made and established by parol without violating the statute of frauds or the parol evidence rule.

4. Same—Constructive Severance.

The owner of land before sale may effect a constructive severance of a crop and thus prevent it from passing to the purchaser of the land.

5. Same—Sale of Land—Share-Crop Agreement—Reservation— Oral Notice to Purchaser.

An oral agreement whereby corn was planted on the basis that the landowner receive 1/3 of the crop and the share cropper 2/3 of the crop of which oral notice was given to defendant purchaser of the land when sold while the crop was yet growing and an oral reservation made by the vendor effected a constructive severance of the crop and it did not pass with the land by the conveyance which contained no reservation.

6. Equity—Cross Bill—Pleading—Pretrial Statement.

Defendant vendors in suit by share croppers against purchaser and the vendors were not barred from recovering 1/3 of corn crop from purchaser by failure to file a pleading specifically entitled a cross bill, where it appears that such defendants did seek affirmative relief in their answer and the pretrial statement of the trial judge served to amend the pleadings and state the essential feature of the cross bill (Court Rule No 35, §§ 5, 6 [1945]).

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted January 9, 1957. (Docket No. 25, Calendar No. 46,936.) Decided September 4, 1957.

Bill by Philip Blough against Irwin W. Steffens, Gladys Steffens, Howard A. Miller and Mildred J. Miller to enforce rights to share of harvest of crops on land which was sold to defendants Steffens. Defendants Miller ask for value of their share. Decree directing defendants Steffens to pay value of harvest

2/3 to plaintiff and 1/3 to defendants Miller. Defendants Steffens appeal. Affirmed.

*John P. Keusch,* for plaintiff.

*Albert J. Rapp,* for defendants Steffens.

*Burke, Burke & Ryan,* for defendants Miller.

EDWARDS, J. This case concerns title to a corn crop ripening in a farmer's field. In law school terms the legal problem would be stated thus:

"A," the owner of Whiteacre, contracted with "X" to plant 22 acres in corn to be divided 1/3 to "A" and 2/3 to "X". While the corn was ripening in the fields, "A" sold Whiteacre to "B" by written conveyance, orally reserving the corn. On "B's" refusal to let "X" harvest the corn, "X" sues "A" and "B" for the value of his 2/3 share of the corn crop. "A" likewise claims his 1/3. Can each recover?

This statement of our principal question omits reference to a fact dispute which we will deal with first. The defendant, appellant herein, at trial denied that there was any oral reservation of the corn crop at the time of his purchase of the farm. The judge ruled against the defendant on this fact question, finding that there was an oral reservation. The facts and testimony set forth below indicate the reasons for the chancellor's finding on this topic.

Defendants Howard and Mildred Miller were the owners of a 160-acre farm. In 1953 they entered a share-crop agreement with plaintiff Philip Blough whereby Blough would plow, plant and harvest a crop with 1/3 of the crop to go to the Millers and 2/3 to himself. In 1954 Blough planted 35 acres

of oats and 22 acres of corn; the oats were harvested and divided before the occurrences giving rise to this controversy.

The Millers had had their farm for sale for some time, and about September 1 or 2, 1954, defendant Irving W. Steffens came to the Miller farm along with a Mr. Kern, a broker. Following discussion among the parties, it was agreed that Steffens would purchase the farm for $22,000, that the Millers would remove or burn down all trees, that income from an oil lease would be distributed in a certain manner; and that possession would be taken by Steffens, part immediately upon closing, part in 2 weeks, and the remainder in 2 months.

This agreement was drawn up a day or two later into a sales agreement dated September 3, 1954, and signed by the Millers and Mr. Steffens, and witnessed by Mr. Kern. Subsequently a deed was signed and delivered. The 22 acres of growing, unripened corn were mentioned neither in the sales agreement nor the deed.

On November 22, 1954, Blough went to the farm to harvest the corn and Steffens ordered him off and took the corn that he had harvested. Blough then filed a bill of complaint seeking to restrain defendants from preventing his harvesting the corn and seeking damages for loss of his 2/3 of the crop.

At the hearing plaintiff Blough called both Mr. and Mrs. Miller for cross-examination under the statute;* and they testified that they had told Mr. Steffens expressly at the time of the sale of the share-crop agreement with Blough, and that Mr. Steffens said he didn't want any part of the corn. For this reason, testified Mr. Miller, no exclusion was included in the sales agreement or deed.

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

Mr. Steffens, in turn, denied any such agreement. Steffens then called as a witness Mr. Kern who testified, in part, as follows:

"*Q.* And was there anything said at that time about reservation or about corn?

"*A.* I can't say there was a reservation made to it but it was mentioned. Mr. Miller asked Mr. Steffens if he would buy his 1/3 of the corn when it was picked.

"*Q.* And what else was said?

"*A.* Mr. Steffens said, 'I can't buy it when it is picked. It'll have to be dry so I can buy it by the hundred.' And Mr. Miller said, 'Can I put it in the crib until it's dry?' and then he said, 'I think we can make some arrangement.' And that is as far as I know about the corn."

The case was presented by plaintiff on the theory that actual notice of Blough's and Miller's reserved interest in the corn crop had been given to Steffens and agreed on by him before the signing of the sales agreement, and, that, therefore, the corn was constructively severed from the realty and did not pass to Steffens by the deed. Defendants Steffens, as noted, denied notice, reservation and severance.

The trial court, placing great weight upon the testimony of Mr. Kern, found the facts to be against Steffens, and entered a decree awarding $1,180.90 to Blough and $590.45 to Millers.

Defendants Steffens appeal.

On appeal of a chancery decree we hear the matter *de novo* on the record but we give great weight to the findings of fact of the chancellor. *Hartka* v. *Hartka,* 346 Mich 453; *Donaldson* v. *Donaldson,* 134 Mich 289. Here the testimony of appellants' own witness convinces us, as it did the circuit judge at the hearing, that there was express notice of the share-crop agreement given to defendants Steffens and that there was an oral understanding to reserve

the corn crop entered into prior to the sale of the farm.

Our remaining question of moment is, can such an oral reservation be effective as against a written sales agreement and deed, neither of which mentions any reservation?

Appellant relies heavily upon Justice COOLEY's words:

"We are aware that there are some decisions which sustain a parol reservation of growing crops in a sale and conveyance of lands, and which, therefore, might justify the evidence sought to be introduced in this case; but these decisions, we think, are not only unsound in principle, but they are opposed to the current of authority, and the well-understood rule in this State. The purpose of such evidence is to vary the legal effect of the conveyance by establishing a contemporaneous qualifying agreement; and it, therefore violates a fundamental rule of evidence, to say nothing of any question that might be raised by it under the statute of frauds. * * * We are not to be understood by this opinion as holding or intimating that a parol sale or any parol contract relating to a growing crop, made upon a valuable consideration is invalid. We only hold that a parol contract contemporaneous with a written contract cannot be shown." *Vanderkarr* v. *Thompson,* 19 Mich 82, 86.

A number of early Michigan decisions have followed the *Vanderkarr* rule. *Clifton* v. *Jackson Iron Company,* 74 Mich 183 (16 Am St Rep 621); *Adams* v. *Watkins,* 103 Mich 431; *Dodder* v. *Snyder,* 110 Mich 69. And appellant argues that Justice COOLEY's language and the cases referred to demand the vacating of the decree we currently have before us.

The question of whether growing crops are personal property or realty has plagued many courts in many lands.

Generally, unless reserved, growing crops are part of the realty which passes with the conveyance of land. But, as recognized in the quotation from Justice COOLEY, there are many situations where growing crops are held to be personalty.

"The common-law rule that growing crops pass with the title to the land upon a conveyance thereof in fee by one who owns both the crops and the land assumes the absence of a reservation of the crops. The modern authorities hold that an effectual reservation of an annual crop may be made and established by parol without violating the statute of frauds or the parol evidence rule. A reservation of the natural products of the earth, however, must be in writing." 15 Am Jur, Crops, § 13.

In Michigan our statute pertaining to mortgaging goods and chattels makes specific reference to mortgaging of crops "either grown, growing, or to be thereafter planted." CL 1948, § 566.140, as amended by PA 1951, No 244 (CLS 1954, § 566.140, Stat Ann 1953 Rev § 26.929). In addition, our probate code provides for growing crops to be part of the personal estate unless plainly directed by will to pass with the realty. CL 1948, § 702.59 (Stat Ann § 27.3178 [129]) ; *In re Hepinstall's Estate,* 323 Mich 322.

The logic for these instances of legal severance of crops despite their physical attachment to the land is found in the nature of the process of cultivation and sale. Farm crops require costly seed, labor to plow and plant and cultivate and labor to harvest. At every point there is motive for contracting for disposal of a portion or all of the ultimate crop entirely separately from the real estate. The farmer who needs money for seed may mort-

gage his crop (but not his farm) to the lender. When he needs labor he may agree to divide his harvest with the farmhand who plows or hoes or harvests. For the general operation of his farm he may arrange for sale of the crop not yet approaching maturity and receive an advance from the purchaser. These transactions are understood by all to pertain to personalty. *Cunningham* v. *O'Connor,* 136 Mich 293; *Michigan Sugar Co.* v. *Falkenhagen,* 243 Mich 698. And they frequently are oral agreements and enforceable when removed from the statute of frauds pertaining to "goods and choses" by acceptance or delivery or performance in whole or part. Uniform sales act, CL 1948, § 440.1 *et seq.* (Stat Ann § 19.241 *et seq.*), particularly sections 4 and 5.

To meet these practical facts of farm life the courts have made a distinction between the natural fruits of the soil (*fructus naturales*) and the cultivated products thereof (*fructus industriales*). As to these latter:

"With very few exceptions growing crops, *fructus industriales,* are regarded as personal chattels capable of being sold by oral contract, irrespective of their state of maturity, without violating the provision of the statute of frauds which requires the sale of an interest in land to be in writing." 15 Am Jur, Crops, § 40.

See, also, 1 Thompson on Real Property (Perm ed), § 137, pp 193, 194; annotation, 8 ALR2d 565.

Our current problem concerns the effect, if any, of a parol reservation of a corn crop at the time of conveyance of the underlying land. The judge in equity who heard the matter found that there had been a constructive severance of the corn crop—presumably by the share-crop agreement—and that

there had been an oral reservation agreed on at the sale of the farm.

The Michigan case closest to these facts is *Kroh* v. *Dobson,* 324 Mich 384 (8 ALR2d 561). Here a written sales agreement reserved the wheat to the seller. Later the warranty deed which conveyed the farm omitted any reference to the wheat. The Court said (p 388):

" 'The owner of the land before sale, or foreclosure of a vendor's lien against it, may effect a constructive severance of a crop, and thus prevent it from passing to the purchaser.' *Ray* v. *Foutch* (Tex Civ App), 50 SW2d 380, 381.

"In the case at bar, as between the parties to the transaction, the sale, the wheat was personal property. There was no change in the attitude of the parties toward the wheat in the time intervening between the contract and the deed, so that when the deed was executed, the wheat, being personal property as between the parties, did not pass under the deed. The deed operated on the real estate only and not on the personal property. That such was the actual understanding of the parties is evidenced by the conversation as to rolling the wheat.

"If there had not been constructive severance, there being no reservation in the deed, the title to the wheat would have passed to defendant under the deed in question.

"The trial court found the plaintiff to be 'entitled to the ownership and possession of the wheat described in said bill of complaint, and entitled to enter upon the lands of the defendant for the purpose of harvesting the same and the removal thereof,' and granted the injunction prayed for.

"The decree appealed from is affirmed."

In the ALR annotation which follows *Kroh* v. *Dobson, supra,* we find the following comment:

"While there seems to be only meager authority upon this question, the somewhat analogous ques-

tion of whether such reservation may be made by parol has been litigated to the extent that it may be stated that the modern authorities hold that an effectual reservation of an annual crop may be made and established by parol without violating the statute of frauds or the parol evidence rule." 8 ALR 2d 565.

*Cooper* v. *Kennedy,* 86 Neb 119 (124 NW 1131, 31 LRA NS 761, 136 Am St Rep 701) ; *Harbold* v. *Kuster,* 44 Pa 392; *Tallman* v. *Havill,* 133 Or 407 (291 P 387) ; *Grabow* v. *McCracken,* 23 Okla 612 (102 P 84, 23 LRA [NS] 1218, annotation ff).

We believe the *Kroh Case* states the modern and the better rule and plant our current decision thereon. To the degree that the earlier cases referred to are clearly in conflict, they are overruled.

We hold in the current case that the share-crop agreement effected constructive severance of the corn crop and rendered it personal property as between the parties to that agreement. We hold further that oral notice of said agreement (and agreement to the reservation of the crop) having been found at the time of conveyance of the farm, the crop was personalty as to defendants Steffens likewise and did not pass with the land.

As to appellants' contention that defendants Millers' recovery was barred by their failure to file a pleading specifically entitled a cross bill we are unimpressed. The record shows that this objection was thought of first on motion for rehearing and reiterated on appeal. The Millers sought affirmative relief in their answer. At pretrial the judge plainly phrased the trial issue as to them and noted with the agreement of all parties that defendants Miller "claim a 1/3 interest in the corn pursuant to the sharecropper agreement." This pretrial statement served to amend the pleadings and state the essential feature of a cross bill.

Court Rule No 35, §§ 5, 6 (1945) ;* *Simonelli* v. *Cassidy,* 336 Mich 635; *Ewer* v. *Dietrich,* 346 Mich 535.

We have likewise reviewed appellants' contention pertaining to a claimed leading question and find no prejudicial error.

The decree is affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.

---

\* Section 6 was added in 1952. See 334 Mich xl.—REPORTER.