LANGSCHWAGER *v.* PINNEY.

1. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.
   Once equity takes jurisdiction of proceedings, it should determine all issues between the parties in order to avoid a multiplicity of litigation.

2. BOUNDARIES—STAKES—METES AND BOUNDS—FINDING OF TRIAL COURT—EVIDENCE.
   Evidence presented in suit involving dispute as to summer-resort property *held,* to sustain trial court's finding that defendants'

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am Jur, Equity § 127.
[3] 3 Am Jur, Appeal and Error §§ 895, 912.
[4] 19 Am Jur, Estoppel § 49.
[5] 45 Am Jur, Reformation of Instruments §§ 38, 55.
[6] 3 Am Jur, Appeal and Error §. 825.

predecessors had purchased their property with reference to a certain stake and a fence subsequently built thereto, rather than by the metes and bounds description in the deed.

3. APPEAL AND ERROR—CHANCERY CASES—DE NOVO HEARING—FINDINGS OF TRIAL COURT—WITNESSES.

Equity appeals are heard *de novo* by the Supreme Court, but great credence is given to the findings of fact made by the trial court who had the opportunity to see and hear the witnesses.

4. ESTOPPEL—KNOWLEDGE OF REAL FACTS.

The doctrine of estoppel is generally not applicable unless the party estopped acts with knowledge, actual or constructive, of the real facts.

5. REFORMATON OF INSTRUMENTS — DEEDS — DESCRIPTION — BOUNDARIES—MUTUAL MISTAKE.

Equity will grant relief by reformation of a deed, describing property conveyed by metes and bounds, where it was executed by the parties under a mutual mistake of fact pertaining to the boundary.

6. APPEAL AND ERROR—CORRECT RESULT.

The Supreme Court does not reverse a decree in equity when the trial court arrived at the correct result for other reasons than the Supreme Court.

Appeal from Iosco; Dehnke (Herman), J. Submitted October 10, 1957. (Docket No. 31, Calendar No. 47,491.) Decided March 6, 1958.

Bill by Fred P. Langschwager and Nellie K. Langschwager against Lewis C. Pinney and Margaret A. Pinney to reform deeds and establish boundaries to property. Decree for plaintiffs granting partial relief. Plaintiff appeals. Affirmed.

*Robert R. Day* and *Curry & Curry,* for plaintiffs.

*John R. Watkins,* for defendants.

EDWARDS, J. This is a dispute over a boundary line between 2 resort neighbors who own cottages front-

ing on Tawas bay in Iosco county.   The history of the dispute goes back to February 3, 1943, when the plaintiffs and appellants herein, Mr. and Mrs. Langschwager, became owners of 453 feet of beach frontage extending north and south along Tawas bay.

In the intervening years plaintiffs deeded the northernmost 100 feet of this property to a business associate, Mr. Sargent.   Then on September 2, 1943, plaintiffs conveyed the property which is the subject of this dispute to Mr. and Mrs. Abraham L. Heystek by a warranty deed containing a metes and bounds description.

The effect of the metes and bounds description was to convey the south 153 feet of plaintiffs' original parcel to the Heysteks, with the exception therefrom of all of the property lying "west of the east line of the present right-of-way across said property running in a northerly direction."   This litigation is best understood by reference to plaintiffs' exhibit 1, a survey by Registered Land Surveyor R. J. Cooke, which is reproduced herewith:

During the winter of 1943, 3 cottages were purchased from the present site of the Wurtsmith Air Force Base by Mr. Rolland Sargent, son of plaintiffs' partner previously referred to. These 3 cottages were placed, 1 on the Sargent property, 1 on the 200 feet retained by the Langschwagers, and 1 on the Heystek property. There is testimony to the effect that this last cottage was placed as far south on the Heystek property as the topography of the land would conveniently allow, there being a hole south of the present location of the cottage.

Subsequent to the placing of the Heystek cottage, Mr. Langschwager had an engineer of his company, Mr. Bierly, make a survey, and Mr. Langschwager had a rail fence built along what the parties supposed to be, generally, the east-west boundary between Langschwager's property and that which Heystek had acquired. The record is clear that the fence was built after the Heystek cottage had been placed on foundation where Mr. Heystek wanted it and, further, that the fence was built after the deed conveying the property by metes and bounds from the Langschwagers to the Heysteks had been signed and recorded. It was located apparently by stakes which the Bierly survey had placed.

On March 20, 1950, the Heysteks sold the property which they had acquired in the transaction described above to present defendants, Lewis C. Pinney and Margaret A. Pinney, by warranty deed. The deed given by the Heysteks to the Pinneys contained an identical description to that contained in the deed from the Langschwagers to the Heysteks.

But in the meantime it appears that the western boundary of the property became a possible subject of dispute because of the fact that a new road had been built by the Langschwagers in 1946 to take the place of that which existed at the time of the 1943 deed. A dispute indeed did arise between the Pin-

neys and the Langschwagers over whether the property the Pinneys purchased extended back from Tawas bay to this new road, or whether, as the Langschwagers asserted, it was bounded by the easterly limit of the now-abandoned old road.

. While this dispute was raging, with some bitterness between these next-door resort neighbors, the Langschwagers filed their first bill of complaint reciting the dispute and asking the court for injunctive relief confining defendants Pinneys' property to that portion which was east of the old road.

In the course of preparation for trial, plaintiffs' exhibit 1 was prepared by Surveyor Cooke, based upon the metes and bounds description contained in the 1943 Langschwagers' deed to the Heysteks and in the 1950 Heysteks' deed to the Pinneys. This survey not only served at trial to buttress plaintiffs' original argument pertaining to the westerly boundary of the Pinney property, but in addition it presented plaintiffs with a brand new issue.

The Cooke survey discovered that at the lake front the northern boundary between the Langschwager and Pinney property, if drawn according to the metes and bounds description of the 2 deeds, lay some 12 feet south of the location of the rail fence which apparently had been regarded by all parties up to that time as at least a fair approximation of the boundary line. In addition to the fact that this new line would serve to increase the Langschwager lot by 12 feet at the lake front (and decrease the Pinney lot by the same amount), the line as found by Surveyor Cooke placed the boundary line between these 2 disputing parties literally on the doorstep of the Pinney cottage. It likewise appears that the surveyor's line placed well within the Langschwager lot a portion of a cement-block wall, and a portion of an outdoor fireplace and grill likewise previously built as a part of defendants' property.

With these facts known, the Langschwagers filed an amended bill of complaint alleging that the fence to the north of defendants' property "was put up erroneously, either deliberately or otherwise, under the supervision of Abraham L. Heystek several years after 1943," and further alleging that said fence "is not on the boundary line, but in fact is a considerable distance, to-wit, 12 feet, to the north of the north boundary of defendants' property." Plaintiffs therefore sought a court decree for suitable markers to be placed indicating this new line, and to enjoin defendants from trespassing beyond it.

With this new issue thus framed, the cause came on for hearing before the Honorable Herman Dehnke, circuit judge. Toward the close of the proceeding it appeared to Judge Dehnke that it was essential to the disposition of the cause of action that the Heysteks be made parties defendant. By stipulation, in which the plaintiffs Langschwager, the defendants Pinney and the Heysteks all joined, this was accomplished.

Judge Dehnke found that the deeds from the Langschwagers to the Heysteks, and from the Heysteks to the Pinneys, clearly referred to the east line of the old road as the western boundary of this lot, and granted reformation of the deed in his decree so as clearly to establish this line. No appeal is taken by either party from this decision.

In relation to the issue pertaining to the northern boundary, Judge Dehnke found as follows:

"Now as to the fence along the north line, the fence on the north side of the Pinney house that was placed there by Mr. Heystek, I think it's clear beyond any possible doubt that there was a stake along the east side of the lot to which the fence in question was shortly afterward built. It appears not only from the testimony but from the plaintiffs' original sworn bill of complaint that there was a stake what [*sic*] was

intended to be the northeast corner of the lot sold to the Heysteks that both parties intended to convey, according to convey [sic], and purchase according to that stake, and that the fence was built according to the stake by the plaintiffs; and that the Heysteks purchased understanding that they were buying to the line reflected by that stake. That is clear not only from the testimony but from the circumstances. Nobody in his right mind would place a house so close to the line that the line would cut off a portion of the porch to the door on that side of the house; nobody would do that knowingly. I find as a fact that there was a stake there which the Langschwagers represented to be the east end of the north line of the lot they were selling to Heystek, and that the Heysteks accepted as evidence of the line. The building of the fence to that stake shortly afterward by Mr. Langschwager and under his direction, and Mr. Heystek having nothing whatsoever to do with determining where the fence should be built, is consistent only with the theory that what I have said was true."

Judge Dehnke further based his decision on grounds of estoppel, holding that:

"By permitting the fence to exist under these particular circumstances, under circumstances which almost in printed language would cause a prospective purchaser to believe that the line, the proper line, was where the fence was located, the plaintiffs have estopped themselves from asserting their rights against anyone who innocently acted upon that obviously justified assumption. * * *

"Now, aside from everything else, it is clear that the defendants would suffer a serious injury if the deeds were not reformed because it very substantially lessens the value of their house and its usability to have the line placed so close to the north side of the house as would be necessary to make it conform literally to the description given in the deed. And clearly, as I have indicated, by delaying any claim

that the fence was not on the correct line until innocent purchasers had been misled by the things they could see upon the ground, the plaintiffs made it possible for a dispute to occur, for a loss, an injury, to be made possible.  Perhaps the decision might be rested upon that principle, that where 1 of 2 innocent parties must suffer loss it must be borne by that 1 of them who by his conduct has rendered the injury possible."

This is a suit in equity with plaintiffs seeking to enjoin their neighbors from using certain boundary areas to which plaintiffs claim legal title. In their prayer, amongst other forms of relief, plaintiffs sought reformation of the deed. Defendants filed an answer and cross bill also seeking equitable relief and asking that the court resolve all issues between the parties

We believe that the circuit judge was correct in holding that when equity had once taken jurisdiction of the proceedings, it should determine all of the issues between the parties in order to avoid multiplicity of litigation. *Culver* v. *Avery,* 161 Mich 322; *Koontz* v. *Bay Circuit Judge,* 224 Mich 463, 468; *Ollig* v. *Eagles,* 347 Mich 49.

As to the only issue on appeal—the reformation of the deed pertaining to the northern boundary of defendants' lot—we note that the chancellor found as a fact that the property was sold by plaintiffs to defendants Heystek, and by the latter to defendants Pinney, by reference to a certain stake and a fence subsequently built thereto, rather than by the metes and bounds description in the deed. There is evidence in this record to sustain such a finding.

While we hear appeals in equity *de novo,* we give great credence to the findings of fact made by the chancellor who had the opportunity to see and hear the witnesses. *Donaldson* v. *Donaldson,* 134 Mich

289; *Hartka* v. *Hartka,* 346 Mich 453; *Blough* v. *Steffens,* 349 Mich 365.

In this instance it appears beyond question that all parties proceeded for 12 years on the assumption that the now-controversial fence was indeed built on the boundary line. No one knew differently until the Cooke survey in the midst of this litigation. Indeed plaintiffs, having built the fence to their own surveyor's line, stood by and watched a house placed on defendants' property so close to the line that the front steps encroached on property they now claim, and, in addition, they watched other valuable improvements constructed by defendants on the same strip they now claim as theirs.

We believe that the chancellor was right in feeling that equitable principles required his reformation of the deed to correspond to the plainly-expressed intention of the parties.

We believe, however, that the equitable principle involved in this matter is that of mutual mistake. The doctrine of estoppel is generally not applicable unless the party estopped acts with "knowledge, actual or constructive, of the real facts." 19 Am Jur, Estoppel, § 42, p 643. This record demonstrates conclusively that plaintiffs had no greater knowledge of any difference between the line on which the fence was built and the property line in the deed than did defendants. They may well have known that there was a possibility that the fence was 5 or 6 inches off the true line as defendant Heystek testified. This is a far cry from 12 feet.

This record is clear and convincing. The original conveyance and the subsequent conveyance were entered into under mutual mistake of fact pertaining to the northern boundary of defendants' property. In such a situation, equity will grant relief by reformation of the deed. *Damm* v. *Moon,* 48 Mich 510; *Zomerhuis* v. *Blankvoort,* 235 Mich 376; *Blake* v.

*Fuller,* 274 Mich 534; *Cline* v. *Daniels,* 346 Mich 375; 19 Am Jur, Equity, § 55.

See, also, *Urick* v. *Burge,* 350 Mich 165.

The chancellor entered a just decree. We reach the same result on a different equitable principle. We do not reverse a decree in equity when the court below arrived at the correct result for other reasons. *Ormsby* v. *Barr,* 22 Mich 80; *County of Ottawa* v. *Zwagerman,* 229 Mich 501.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.