*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUDY HORNAK, and KENNETH HORNAK,

Plaintiffs-Appellants,

v

HORNAK FARMS, INC., F. RONALD
HORNAK[1], KEITH AMMAN, CRAIG HUFF,
AARON TITHOF, AMY WAUBEN, BRYAN
TITHOF, ELMER SCHNEIDER, BRIAN
SCHNEIDER, MICHAEL SCHNEIDER, and
SCHNEIDER FARMS, LLC,

Defendants-Appellees,

and

KIRK AMMAN, and JEFFREY SCHNEIDER,

Defendants.

UNPUBLISHED
March 19, 2019

No. 340960
Saginaw Circuit Court
LC No. 14-024390-CH

Before: SAWYER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In this action for partition and quiet title, plaintiffs appeal by right an order denying their motion for summary disposition and instead partially granting summary disposition to all defendants. Because the disputed property has since been deeded to plaintiffs, the sole issue before us is whether the trial court properly determined that plaintiffs' request for damages for crop profits was barred by res judicata. We affirm.

I. BASIC FACTS

---

[1] F. Ronald Hornak died while this appeal was pending.

This case arises from a prolonged probate dispute between siblings Kenneth Hornak ("Kenneth") and F. Ronald Hornak ("F. Ron") after the death of their mother, Vivian G. Hornak ("Vivian").

## A. PREVIOUS LITIGATION

In September 2013, the Saginaw Probate Court entered an order in Docket No. 10-125981-DE/CZ, approving a settlement agreement concerning the Vivian Hornak Estate. In pertinent part, the probate court ordered:

> All real estate remaining in the ESTATE OF VIVIAN G. HORNAK, DECEASED, namely a 70.58 acre parcel on Ditch Road, Chesaning, Michigan shall be deeded by the personal representative to HORNAK FARMS, LLC. HORNAK FARMS, LLC shall then deed 50 acres of the parcel as identified by KENNETH HORNAK to him, free of any security interest for attorney fees and expenses, as soon as a land division application has been approved by Chesaning Township.

In signing the order, Kenneth agreed to "waive any and all claims against the Estate of Vivian G. Hornak, deceased, F. Ron Hornak, Keith Amman, Craig Huff, Aaron Tithof, Amy Wauben and Bryan Tithof, with prejudice."

Later, this Court summarized the litigation that ensued after the probate court's aforementioned order:

> The decedent [Vivian] left a will that was admitted to probate which included a specific devise of an 80-acre parcel of land and accompanying fixtures to [her grandchild.] The remainder of her property was to be distributed "one share for each child of mine who survives me and one share for the decedents, per stirpes of each child of mine who fails to survive me."
>
> [Kenneth] thereafter produced four unrecorded deeds, two from 2010 that deeded all of the decedent's property solely to him, and two from 2004 that deeded all of the decedent's property to her and appellant jointly with "right of sole survivorship." . . . We affirmed the probate court's decision to set aside the deeds in *In re Estate of Hornak*, unpublished opinion per curiam of the Court of Appeals, issued July 5, 2012 (Docket No. 301912) [*In Re Estate of Hornak I*].
>
> Following this Court's decision, an LLC was formed that was owned by all the heirs accounted for in the decedent's will with the exception of [Kenneth], for the purpose of transferring most of the real property to the LLC. As of May 21, 2013, all of the decedent's property had been transferred to the LLC with the exception of a 70-acre parcel that had yet to be resolved. [*In re Estate of Hornak*, unpublished per curiam opinion of the Court of Appeals, issued April 23, 2015 (Docket No. 319955), p 2 (*In Re Estate of Hornak II*)].

A quitclaim deed to the land was given to Hornak Farms, LLC, on October 22, 2013. *In Re Estate of Hornak II*, unpub op at 2. Thereafter, the following occurred:

> Subsequently, [Kenneth] filed an objection to . . . an accounting and [closure] of the estate, arguing in part that the estate should not be closed until he received a check for crops that had been harvested on 50 acres of the estate that was to be deeded to him as part of the settlement.

> * * *

> A hearing was thereafter held [for an accounting of the estate.] [It was] explained that the harvested crops [Kenneth] wanted money from were part of a sharecrop agreement with a farmer named Schneider. [Kenneth] neither disputed this at the hearing nor does he dispute it in his briefs filed with this Court in the present appeal. [All] that remain[ed was] for the LLC to deed the 50 acres to [Kenneth]. [F. Ron's] attorney stated that the LLC was prepared to deed the 50 acres as soon as appellant submitted a division of 50 acres that would be approved by the township. [F. Ron's] attorney stated that the one division appellant had already requested would have left the LLC a landlocked parcel and that the township "basically laughed at it."

> The probate court found that the agreement did not have any separate provision regarding the disputed harvested crops. The court also found that because the property belonged to the LLC and not the estate, the decedent's will did not control that distribution. The court found that appellant had agreed as part of the settlement to waive any and all claims against the estate. The court approved . . . other distributions set forth in its previous rulings. The probate court also entered an order stating that all of [Kenneth's] objections were overruled, [and denied his claim for damages for crop profits.] The same day, the court entered an order allowing the personal representative's final account, discharged the personal representative, and closed the estate. [*In re Estate of Hornak II*, unpub op at 2-3.]

On appeal to this Court from the probate court, Kenneth argued:

[T]hat he is entitled to cash from the grain harvest on part of the 70 acres that was the subject of the settlement agreement [from the time the agreement was signed.] Because the agreement gave him 50 of the 70 acres, he argues, cash from the grain harvested on 50 acres of the land belongs to him. A necessary assumption of this argument is that growing crops are part of the real property that passes with a conveyance of the land. As support for his argument, appellant cites *Blough v Steffens*, 349 Mich 365; 84 NW2d 854 (1957). [*In re Estate of Hornak II*, unpub op at 3.]

This Court rejected Kenneth's claim and explained that:

[i]n *Blough*, the owner of real property had entered into an agreement with a third party to have the third party cultivate and grow crops on the owner's land, and in exchange the third party would receive 2/3 of the crop and the owner would receive 1/3. *Id*. at 367. Prior to the harvest the owner sold the real property to the defendant, who thereafter refused to allow the third party access to harvest the crop. *Id*. at 367-368. The trial court and the Supreme Court determined that the defendant had express notice that the prior owner and the third party had entered the sharecrop agreement and there was an "oral understanding to reserve the corn crop entered into prior to the sale of the farm." *Id*. at 369-370.

[Kenneth] argues that it was both the presence of a sharecrop agreement and an oral notice of that sharecrop agreement in *Blough* that served to sever the crops from the real estate. He argues, accordingly, that in the absence of an oral reservation, growing crops on conveyed property follow the conveyance and that, therefore, he should receive the profit from the harvested crops. [Kenneth's] argument misperceives the facts of *Blough*. The Supreme Court did not find that there was an express oral reservation, merely that the purchaser had knowledge of a sharecrop agreement and that this knowledge created "an oral understanding" that the crops were severed from the realty. *Id*.

This Court has also determined that a "Christmas tree crop was constructively severed from the real estate" by way of an agreement that third parties "had a right of entry to spray, prune, care for, as well as to harvest and remove" the trees. *Groth v Stillson*, 20 Mich App 704, 706-707; 174 NW2d 596 (1969). When the land on which the trees were growing was sold, the trial court found that the purchasers "had notice of the sale of the trees to third parties prior to their deed." *Id*. at 706. Noticeably absent from the facts in *Groth* is a specific reservation of the trees in the deed between the buyer and seller. See *id*. at 705-706. What the *Groth* Court focused on was the fact that the seller and the third parties considered the trees a crop and that the buyers of the real property had notice of the sale of the trees prior to receiving the deed. *Id*. at 706. [*In re Estate of Hornak II*, unpub op at 3-4.]

Ultimately, this Court concluded in *In re Estate of Hornak II* that
the sharecrop agreement with farmer Schneider severed the crops from the realty and required that they be treated as goods or personal property, not as part of the realty. It is not important that the crops were not orally reserved. What is important is that appellant had knowledge of the sharecrop agreement at the time he entered the settlement agreement.[1]

_____

[1]Additionally, even if appellant's argument that growing crops pass to the owner of the real estate is accepted, he does not yet own the real estate. While he has an interest in the property by means of the settlement agreement, the current title owner is the LLC. [*In re Estate of Hornak II*, unpub op at 4.]

B.  PRESENT LITIGATION

While the probate case was pending in this Court, this action was initiated in Saginaw Circuit Court in September 2014.  After the release of this Court's opinion in *In re Estate of Hornak II*, plaintiffs amended their complaint alleging that the LLC and individual defendants had purposefully interfered with obtaining township approval and, as a result, defendant had been defrauded of receiving crop profits on the portion of land that should have been his. Plaintiffs simultaneously filed a motion for summary disposition requesting that the court enter an order awarding them crop income that they were purportedly owed from the parcel. Defendants opposed plaintiffs' motion.  In December 2016, the Saginaw Circuit Court granted defendants summary disposition, and dismissed with prejudice plaintiffs' claim against them for crop profits based on res judicata.

Plaintiffs now appeal by right.

II. ANALYSIS

This Court reviews de novo whether summary disposition was properly granted.  *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).  Likewise, we review de novo the determination whether res judicata bars applies to a claim.  *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007), citing *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999).

Res judicata is meant to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  *Pierson Sand & Gravel, Inc*, 460 Mich at 380.

> Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical.  A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies.

> Michigan courts have broadly applied the doctrine of res judicata.  They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Bryan v JPMorgan Chase Bank,* 304 Mich App 708, 715; 848 NW2d 482, lv den 497 Mich 869 (2014), quoting *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999) (citations omitted).].

In the probate matter, Kenneth had no right to the crop profits when he merely had a legal interest in the land on which the crops grew.  *In re Estate of Hornak II*, unpub op at 3-4.  Here, plaintiffs claim that the individual defendants, and subsequently the LLC that was composed of the individual defendants and held the land, conspired or worked in concert to obstruct the land transfer to them, and deprived them of crop profits from the land.  Plaintiffs artfully craft their argument by discussing whether "conditions precedent" of the settlement agreement were met or forfeited, but, in reality both cases involve the central issue of whether plaintiffs had any interest

in the crops. The probate court's dismissal of Kenneth's claims against defendants in 2013, and more specifically, its decision to overrule his objection to the settlement based on his claim for damages for crop profits, constitutes an adjudication on the merits. This Court's 2015 affirmance of the probate court's orders further substantiates that the 2013 probate court case was fully adjudicated.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly