FRANK G. PURRINGTON *v.* GUSTAVE H. GRIMM.

January Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, and POWERS, JJ.

Opinion filed May 23, 1910.

*Contracts—Acceptance—Conformity to Offer—Construction of Negotiations—Existence of Contract.*

An acceptance varying from the offer will not create a contract, but an acceptance may go beyond the terms of the offer without varying from it, for the addition may be a mere request, and not a condition to the acceptance.

In determining whether the offer and acceptance resulted in a contract, they should be construed in the light of the situation and purpose of the parties, the subject-matter, and the course of the negotiations.

Defendant sent plaintiff his price list and a letter stating that he had mailed him a catalogue, and offering special terms. At plaintiff's subsequent request defendant quoted prices and terms on specified articles. Plaintiff then wrote, proposing to buy another outfit if defendant would extend specified credit, which defendant agreed to do, stating, however, that he had no buckets of the kind specified by plaintiff, whereupon plaintiff answered that another kind mentioned in defendant's preceding letter might be sent, and also ordering two small articles not mentioned in the previous correspondence, and requested prompt shipment. *Held,* that the correspondence constituted a contract for the sale of the articles finally ordered by plaintiff.

ASSUMPSIT. Plea, the general issue with notice. Trial by jury at the September Term, 1908, Rutland County, *Haselton,* J., presiding. Verdict directed for the defendant on the ground that the plaintiff's evidence did not tend to show a completed contract. Judgment on verdict. The plaintiff excepted. The opinion states the case.

*Homer Sherman* and *Arthur P. Carpenter* for the plaintiff.

There was an unqualified meeting of the minds with reference to the evaporator, tank, spouts, and buckets, and the contract therefor was complete. The mere request that the defendant send him a tapping bit and reamer, which together cost seventy-five cents, was only an incident and not a condition of the contract, and did not nullify or invalidate the contract already consummated for the evaporator, tank, spouts, and buckets. *In re Leeds Banking Company,* L. R. 1 Eq. 225; L. R. 4 H. L. 305; *Culton* v. *Gilchrist,* 92 Iowa 718; *Ferrir* v. *Storer,* 32 Iowa 484; *Philips* v. *Moor,* 71 Me. 78.

*T. W. Moloney* for the defendant.

MUNSON, J. The suit is to recover damages for the non-delivery of goods purchased. The defendant denies that there was a sale. The question is whether certain correspondence shows a contract.

The defendant was engaged in the manufacture and sale of sugar utensils and supplies. The plaintiff, wishing to fit up his sugar place for the making of maple sugar, applied to the defendant by letter for his catalogue of evaporators and sugaring utensils. The defendant replied, enclosing a price list of evaporators, and stating that he had mailed him a catalogue, and that if he would place an order by return mail and pay on delivery he would allow him a special discount of ten per cent., or that he might purchase at regular price by paying one-half cash May first and the balance in one year. Plaintiff acknowledged receipt of the catalogue, and inquired the prices of evaporators of two specified sizes. Defendant replied, giving prices of such sized evaporators with arch complete, including chimney, grate bars, etc., and saying that if plaintiff would send cash with order he would allow him a discount of five per cent., that his regular terms were one-half cash May first and balance in one year, and that if he bought on those terms the price would be net. February 13 plaintiff wrote defendant proposing to buy an evaporator of a specified size and quality, an eight barrel store tank of a certain description, 300 No. 4 spouts with hooks, and 300 galvanized iron buckets of sixteen dollar quality,—if the defendant would give three years time, first payment to be made May first, 1907. February 16 defendant wrote plaintiff that he would accept his order and make out three notes of equal payments, May 1, 1907, 1908 and 1909; but saying that he had no galvanized buckets of the sixteen dollar quality, and that the only thing he could give him was his best bucket selling for $24 per hundred, or I. C. coke tin buckets for $18 per hundred. To this plaintiff replied under date of February 18: "Would say of the buckets that you may send us 300 A A A A IX Bright Charcoal Tin Buckets, also a 7-16 inch tapping bit and ½ inch reamer"; concluding with a request that he ship as soon as possible, and thanking him for the extra time allowed. Defendant did not ship the goods, and after repeated communications of inquiry wrote plaintiff, under date of March 19, that he could not ship them because the information he had regarding plaintiff's financial standing was not satisfactory. It appears that the buckets mentioned in plaintiff's letter of February 18 were the same as the $18 bucket mentioned in the defendant's last preceding letter, and that the tapping bit and reamer first mentioned in

plaintiff's letter of February 18, together cost 75 cents. These facts, with the letters, make the case. The court directed a verdict for the 'defendant on the ground that the plaintiff had not proved a contract.

It is argued in support of the judgment that the letters say nothing about the price of some of the articles ordered. It was not necessary that they should. It is evident from the correspondence that the parties were negotiating on the basis of a price list; the defendant offering a discount for cash, and the plaintiff seeking a longer time of credit at regular prices. When this was settled, the price list would determine the amount of the purchase. It is said that the giving of notes was first referred to in defendant's letter of February 16, and that the plaintiff's letter of February 18 contains no agreement to give them. We think the plaintiff's agreement to the proposed change in the list ordered, with thanks for the extra time allowed for payment, was an implied assent to the manner in which it was proposed that the terms of payment should be evidenced. It is said that the defendant nowhere proposed to sell plaintiff 300 buckets. His whole correspondence was an offer to supply the plaintiff, and his letter of February 16 plainly gave the plaintiff his choice between two kinds of buckets then in stock. It is said that in the plaintiff's letter regarding the buckets the other articles previously mentioned in the negotiation were entirely omitted. It was not necessary that the previous steps in the negotiation should be recited in each succeeding letter. Plaintiff's letter of February 13 was a proposal to buy a specified list of goods if the defendant would give a certain period of credit. Defendant's letter of February 16 agreed to give the credit asked for, but proposed a substitution of one grade of goods for another as to a part of the order. Plaintiff's letter of February 18 agreed to the proposed change. It is plain that these three letters resulted in an agreement, unless this was prevented by plaintiff's mention of the bit and reamer.

It is certain that an acceptance which varies from the offer will not conclude a contract. *Davenport* v. *Newton*, 71 Vt. 11, 21, 42 Atl. 1087. But the reply may go beyond the terms of the proposal without qualifying the acceptance. The addition may be such as fairly to import a request instead of a condition. In determining what one party intended and the other ought to

have understood, regard must be had to the situation and purpose of the parties, and the subject-matter and course of the negotiations. These parties had been negotiating regarding the substantial outfit of a sugar orchard, with proposals and counter proposals induced by the condition of the defendant's stock and the plaintiff's desire to secure a longer term of credit. This negotiation was brought to an agreement by plaintiff's letter of February 18, unless it was held open by the introduction of a new subject-matter—the tapping bit and reamer. The language of this letter is not so complete and exact as to leave no room for construction. If the meaning is that the defendant might make the proposed substitution of buckets provided he would add to the shipment a bit and a reamer, there was no contract. But we think the purport of the letter is the same as if the plaintiff had written, "you may also put in, if you have them on hand, a tapping bit and reamer." It seems clear that if the defendant had shipped the goods without the bit and reamer, the plaintiff could not have refused to take them on the ground that those articles were omitted.

There are a few cases somewhat in point. In *Culton* v. *Gilchrist*, 92 Iowa 718, 61 N. W. 384, plaintiff wrote defendant that he would lease to him for three or five years as he might choose. Defendant thereupon wrote plaintiff that he might make out a lease for five years; that his reason for wanting the place for five years was that he would like to put up a small cook room; that he would like to do this himself if the plaintiff would give him in the lease the privilege of removing the addition if he did not buy the place. It was held that the acceptance was complete; that the matter subsequently introduced was not a condition, but a request. In *Addinell's Case,* L. R. 1 Eq. 225, the facts were these. The Leeds Banking Company issued a circular letter offering to its shareholders, at a certain price, one reserved share for every five shares held, and requesting the shareholder to state whether he wished to take up the shares, and also whether, in the event of any shares remaining, he wished to have more allotted to him, and if so how many; and stating that if taken up the amount must be paid by October first, but without making further condition. Addinell, the holder of twenty shares, replied, in a form submitted with the offer, that he agreed to take four shares, being his proportion of the allotment, and his pro-

portion of shares in addition, if he could have them on the terms stated in the circular. The directors replied that they had allotted him four shares in addition to those he had accepted, making his number of new shares eight, and that the amount must be paid by October first or the shares would be forfeited. It was argued for Addinell that his reply to the Bank's first communication was an acceptance not only of the four shares but of such additional shares as might be allotted him; that it could not be said that there were different terms applicable to the two sets of shares; and that the additional provision of forfeiture contained in the last letter of the Bank applied to both sets, and prevented the completion of a contract. It was considered, however, that there was no offer of more than the four shares, so that Addinell's communication was an acceptance of the four shares only, with a request for a further allotment; that the rights of the Bank concerning the first four shares were in no way dependent upon what might be done regarding the additional shares; and that consequently the subsequent introduction of the clause of forfeiture affected the additional shares only. The same thing was held in *Jackson* v. *Turquand,* L. R. 4 H. L. 305.

*Judgment reversed and cause remanded.*