### BUTLER *v.* FOLEY.

1. CONTRACTS — ACCEPTANCE — COUNTER PROPOSITION — PRINCIPAL AND AGENT—TELEGRAPHS AND TELEPHONES.

Where defendant answered plaintiff's telegraphic offer to purchase certain stock by a counter proposition, defendant made the telegraph company his agent in transmitting said message, and if any error occurred in its transmission his remedy would be against the telegraph company.

2. SAME—ACCEPTANCE—PRECATORY WORDS—EFFECT.

Where plaintiff accepted without qualification defendant's offer, the added words "Please ship stock today. Draft at-

tached," are simply precatory, and do not affect the binding character of the contract.

3. SAME—UNIFORM SALES ACT—ESTOPPEL.

Although defendant might have insisted upon payment at the place of sale, under the uniform sales act (3 Comp. Laws 1915, § 11832 *et seq.*), where he rested his alleged right to refuse delivery solely on the ground that the telegraph company failed to correctly transmit his offer, he is now estopped from asserting his rights under said act.

Error to Wayne; Codd (George P.), J.    Submitted June 8, 1920.    (Docket No. 4.)    Decided September 30, 1920.

Assumpsit by A. E. Butler, doing business as A. E. Butler & Co., against J. William Foley for breach of a contract for the sale of certain corporate stock. Judgment for plaintiff. Defendant brings error. Affirmed.

*Guy A. Miller,* for appellant.

*Millis, Griffin, Seely & Streeter (George B. Murphy,* of counsel), for appellee.

BROOKE, J.    This is an action for damages arising out of an alleged breach of contract to deliver certain stock.    The contract is based upon three telegrams, as follows:

(Exhibit B.)
"Western Union Telegram, Chicago, Ill.
"September 19th, 1916.
"Received 3 P. M.
"J. WILLIAM FOLEY,
   "Wyandotte, Mich.
"We bid hundred fifty-two firm immediate acceptance fifty By-Products.    Wire confirmation.
                           "A. E. BUTLER & CO.
"Charge Acc't.
"JAB
"1 P. M."

(Exhibit C.)
"Western Union Telegram, Chicago, Ill.
"1916, Sept. 20, P. M.
"12:33
"a249H 12 Coll
"Sibley, Mich., 1020A
"A. E. BUTLER & CO.,
"La Salle St., Chicago, Ill.
"Your bid one five two bi-products accepted on forty-four shares.

"J. W. FOLEY."

(Exhibit D.)
"Western Union Telegram, Chicago, Ill.
"September 20th, 1916.
"J. WILLIAM FOLEY,
"Sibley, Mich.
"We confirm purchase forty-four By-Products hundred fifty-two.  Please ship stock today.  Draft attached.

"A. E. BUTLER & CO.
"Charge account.
"12:55
"JAB"

Defendant failed to deliver the stock mentioned in the last two telegrams and plaintiff, having made sale of the stock, was obliged to purchase the same in the open market at a cost of $792 in excess of the price mentioned in the contract.  A jury trial resulted in a verdict in plaintiff's favor for $885.39.  A motion was thereafter made by defendant for judgment notwithstanding the verdict, which was denied.

Defendant now presents the case in this court for review on 22 assignments of error.  The first 10 assignments are directed to the alleged errors in the admission or exclusion of testimony.  Respecting these several assignments, it is sufficient to say that we find therein no reversible error.

The following 10 are directed to the refusal of the court to give defendant's requests, and to direct a ver-

dict for the defendant. The requests proffered by defendant follow:

"*First:* I charge you that this is a contract, if there ever was a meeting of the minds of the parties at all, which was consummated by an acceptance in Michigan; that the uncontradicted evidence shows that the defendant never authorized the sending of the message received by plaintiff; and that plaintiff therefore cannot recover.

"*Second:* Under the evidence in this case, the real correspondence between the parties, which was intended by them to be the basis of any contract, is contained, not in the telegrams of September 19th and 20th, but in the letters of September 19th and 22d.

"*Third:* The intention of the parties governs as to making a contract, and as to the particular part of the correspondence, whether by letter or by wire, which should govern. If you find that it was the intention of the parties that the letters should govern, then I charge you that no contract has been shown, and your verdict must be for the defendant.

"*Fourth:* I charge you that the object, and the only object, of the confirming letters of September 19th and September 22d was to guard against mistakes in the telegrams of the 19th and 22d; the letters and telegrams must all be construed together as a part of the correspondence; and so construing them, no contract is shown to have been made and your verdict must be for the defendant.

"*Fifth:* The wording of the message of the 20th from plaintiff to defendant, as follows: 'We confirm purchase forty-four By-products,' is consistent with the theory that defendant's telegram of the 20th to plaintiff was an absolute acceptance, and not a rejection of the proposal of the 19th and a new offer, and is not consistent with the theory that defendant's telegram of the 20th was a rejection and a new offer. Such being the case, the contract, if any, was consummated in Michigan and is subject to the laws of Michigan.

"*Sixth:* The telegraph company was the agent of plaintiff and plaintiff must therefore stand the loss due to its mistakes.

"*Seventh:* The undisputed evidence in this case is that the only telegram Foley ever authorized contained the word 'subject.' I therefore charge you that he is not bound by the error of the telegraph company in transmitting his message without that word, and your verdict must be for the defendant.

"*Eighth:* The time for delivery of this stock is fixed by the correspondence as September 21st or 22d. (Telegram of September 22.) If a contract was entered into, then the measure of damages was the difference between the purchase price and the market value of the stock at the date of delivery. (Uniform Sales Act, § 67.) The undisputed evidence in this case is that the market value of the stock was 152 on the 20th of September, and there is no evidence beyond market reports of a bid and asked price in a paper published on September 23d, but of the date of whose quotations there is no evidence as to any market price on September 21st and 22d. As to the question of damages, I charge you:

"*a.* That the maximum recovery cannot be greater than the difference between $152 per share and the market price on September 21st or 22d, which was the time of delivery fixed by the parties, if there was any contract at all.

"*b.* That there is no competent evidence at all as to the market price on those days.

"*c.* That therefore, if you find for plaintiff, your verdict can be for only six cents.

"*Ninth:* I charge you that on plaintiff's own theory of this case, no contract was entered into. Defendant's telegram of September 20th is relied upon as an offer to plaintiff. Plaintiff's telegram of September 20th is relied upon as an acceptance. It contains added terms to those of the offer as to time and method of delivery and place of payment. It is therefore not an unconditional acceptance and no contract resulted therefrom."

The last two assignments of error refer to the charge as given.

Defendant's entire contention as shown by the correspondence was based upon his claim that Exhibit C (his telegram of September 20, 1916) should have

contained the word "subject," making the message read as follows:

"Your bid one hundred fifty-two By-Products accepted on forty-four shares, *subject.*"

Defendant offered in evidence his office copy of the telegram (which contained the word "subject") which was excluded, the court saying,

"I ruled that the telegram, Exhibit C here, cannot be varied; that cannot be varied by testimony of Mr. Foley and any claimed copy of something in his files."

It is undisputed that Exhibit C was received by plaintiff without the word "subject" and the evidence of the sending operator is to the effect that the message was transmitted by him exactly as received. But whether the message was erroneously or correctly sent is, as between the parties to this action, in our opinion, unimportant, for reasons hereinafter stated.

It is the contention of the defendant that the plaintiff, having chosen the telegraph company as a means of communication, and having asked an answer by telegraph, constituted that company its agent and that, therefore, any error in transmission of defendant's reply (Exhibit C) should be chargeable to plaintiff. We are of the opinion that the authorities are clear that "the offerer takes the risk as to the effectiveness of communication if the acceptance is made in the manner either expressly or impliedly indicated by him." 13 Corpus Juris, p. 301, § 117, and cases cited. See, also, Jones on Telegraph and Telephone Companies, p. 944; *Trevor* v. *Wood*, 36 N. Y. 307; *Magie* v. *Herman*, 50 Minn. 424 (52 N. W. 909); *Wilson* v. *Railroad Co.*, 31 Minn. 483 (18 N. W. 291); *Durkee* v. *Railroad Co.*, 29 Vt. 127.

The difficulty with defendant's contention is that Exhibit C does not constitute an acceptance of plaintiff's offer, Exhibit B. It was, in fact, a counter-

proposition, and, as such, under the authorities, it operated as a rejection of the original offer. 1 Mechem on Sales, § 229; 1 Elliott on Contracts, § 41; 9 Cyc., p. 290; *Johnson* v. *Surety Co.*, 187 Mich. 467. By refusing to accept plaintiff's proposition for the sale of 50 shares and making the counter-offer to sell 44 shares, defendant became the offerer and, under the authorities above cited, constituted the telegraph company his agent; and, therefore, if any error occurred in the transmission of the message, his remedy would be against the telegraph company and not against the plaintiff.

It is claimed by defendant that plaintiff's Exhibit D is not an unqualified acceptance of defendant's offer (Exhibit C) by reason of the addition of the words "Please ship stock today. Draft attached." With this contention we are unable to agree. The offer contained in Exhibit C was accepted without qualification in Exhibit D and the added words are simply precatory and do not affect the binding character of the contract. 13 C. J., p. 283, § 86; *Marshall* v. *Jamison*, 42 U. C. Q. B. 115; 1 Elliott on Contracts, § 39; *Purrington* v. *Grimm*, 83 Vt. 466 (76 Atl. 158).

It is further defendant's contention that it was plaintiff's duty to pay for the stock and take delivery at Sibley, Michigan; and that not having performed this duty, he is in default and cannot recover. It is doubtless true, as contended by defendant, that he would have had a right to insist on payment at the place of sale under the provisions of Act No. 100, Pub. Acts 1913, § 42 (3 Comp. Laws 1915, § 11873). But defendant made no such suggestion to plaintiff at the time the controversy arose. The correspondence clearly demonstrates that he rested his alleged right to refuse delivery solely upon the ground that the telegraph company had erroneously failed to include the word "subject" in his offer.

Error is alleged upon the admission of certain exhibits purporting to show market quotations at the time the contract was breached. This evidence was merely cumulative, and whether admissible or not, is, therefore, without prejudice.

We find no reversible error in the record, and the judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.