SEELYE v. BROAD.

1. CONTRACTS—MATERIAL DEPARTURE FROM OFFER—ACCEPTANCE.
   Any material departure from the terms of an offer invalidates
   the offer as made and results in a counter proposition which,
   unless accepted, cannot be enforced.

2. SAME—OFFER AND ACCEPTANCE.
   A proposal to accept, or an acceptance, upon terms varying from
   those offered, is a rejection of the offer, and puts an end to
   the negotiation, unless the party who made the original offer
   renews it, or assents to the modification suggested.

3. SAME—IRREVOCABILITY—CONSIDERATION.
   A written offer purporting on its face to be irrevocable for 1
   day is terminable at any time, where there is not shown to
   be any consideration for the irrevocability of the unilateral
   contract.

4. SAME—REVOCATION OF OFFER—EVIDENCE.
   Finding of trial judge that defendant property owners had, in
   good faith, effected a revocation of their offer to sell their
   property by selling it to another party, before plaintiff had
   effected an acceptance of their offer to sell and had commu-
   nicated such fact to defendants *held*, sustained under record
   presented in broker's action for commission.

5. BROKERS—COMMISSIONS—REVOCATION.
   A broker is not entitled to a commission for the sale of land
   until he has done the thing he has agreed to do before a
   revocation or withdrawal of the offer, but the owner may not
   defeat the broker's right to a commission by terminating the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 62.
Difference between offer and acceptance as regards place of pay-
ment or of delivery as variance preventing consummation of
contract. 3 ALR2d 256.
[3, 4] 17 Am Jur 2d, Contracts § 36.
[5] 12 Am Jur 2d, Brokers § 222.
Broker's right to commission on sales consummated after termina-
tion of employment. 27 ALR2d 1348.

agency after the broker has procured a purchaser ready, willing, and able to buy the property on the terms suggested by the owner and has communicated that fact to the owner.

Appeal from Oakland; Ziem (Frederick C.), J. Submitted Division 2 November 2, 1965, at Lansing. (Docket No. 319.) Decided January 11, 1966. Leave to appeal granted by Supreme Court March 17, 1966. See 377 Mich 704, 379 Mich 289.

Complaint by Warren O. Seelye, Jr., doing business as Warren Seelye Realty Company, against Eli Broad and Edythe Broad for damages arising from breach of a contract to employ plaintiff in the sale of real estate. Judgment for defendants. Plaintiff appeals. Affirmed.

*Frank C. Glabach* and *Robert Steen,* for plaintiff.

*Bodman, Longley, Bogle, Armstrong & Dahling* (*Michael B. Lewiston,* of counsel), for defendants.

McGregor, P. J. Warren O. Seelye, Jr., the plaintiff herein, had obtained an exclusive listing agreement from the defendants, Mr. and Mrs. Eli Broad, for the sale of certain real estate owned by the defendants. After expiration of the agreement on May 8, 1962, the plaintiff continued his efforts to find a purchaser for the property. On the morning of May 10, 1962, plaintiff submitted the written offer of Jack Peltz to purchase the property for $65,000. This offer was rejected by defendants. Later the same day, defendant Eli Broad prepared an offer to sell for $70,000 on a standard offer-to-purchase form, signed the same in the place marked for seller's acceptance, and inserted the provision that the offer would be open for one day. Plaintiff took this instrument and returned it the same afternoon, signed by the prospective purchaser Peltz, but with the

sales price changed to $69,000 and a provision inserted requiring the defendants to pay the cost of connecting the sewer to the house. Defendants took the offer under advisement and informed plaintiff that they would let him know by 5 p.m.

When plaintiff went to defendants' office, about 10 a.m. on May 11, 1962, they told him they had sold the property to another party. Plaintiff then secured acceptance of defendant's original offer. At about 10:30 a.m., on May 11th (within the one-day period for which the defendants' offer to sell was to remain open), plaintiff presented the defendants with the instrument of offer signed by Jack Peltz, stating the price at $70,000 and omitting the provision requiring the defendants to pay for the sewer connection. Defendants sold the property to a party unknown to plaintiff for the sum of $66,000.

The trial court, hearing the case without a jury, supplemented the above stipulated facts with the finding that the defendants acted in good faith in revoking the plaintiff's authority to obtain a purchaser by informing him of the sale to another party. From the judgment of no cause of action, entered accordingly for the defendants, the plaintiff brings this appeal, contending first, that the defendants did not show that they revoked plaintiff's authority in good faith, and also, that the offer to sell of May 10, 1962, could not be legally revoked within the one-day period.

The written offer to sell signed by Eli Broad on May 10, 1962, was actually an offer to make two contracts. The first was an offer directed to Jack Peltz of a bilateral contract for the sale of real estate. The second was an offer of a unilateral contract to the plaintiff broker, since the instrument contained a provision offering a commission of 6% to the plaintiff broker for services. The counter-offer made by

Jack Peltz constituted a rejection and termination of defendants' written offer to sell for $70,000.

"Any material departure from the terms of an offer invalidates the offer as made and results in a counter proposition, which, unless accepted, cannot be enforced." (Authorities cited.) *Carrollton Acceptance Co.* v. *Ruggles Motor Truck Co.* (1931), 253 Mich 1, 5.

" 'There must be no variance between the acceptance and the offer. Accordingly a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested.' " *Thomas* v. *Ledger* (1935), 274 Mich 16, 21.

Both are cited with approval in *Harper Building Company* v. *Kaplan* (1952), 332 Mich 651, 655, 656. Whether or not the termination of the offer as to Peltz terminated the plaintiff's authority to continue negotiations need not be decided here.

In spite of the fact that the written offer purported on its face to be irrevocable for one day, defendants retained the power to terminate at any time the offer of unilateral contract to the plaintiff, since the record fails to show any consideration for irrevocability. The principle stated in *Night Commander Lighting Company* v. *Brown* (1921), 213 Mich 214, 216, applies here, even though that case was concerned with the contract for the sale of goods:

"It is elemental that an order such as this, though it contained the words 'not subject to countermand,' may be countermanded at any time before acceptance. Until so accepted, it is simply an offer to purchase and in no way creates a binding agreement." (Authorities cited.)

The trial judge found that the defendants, acting in good faith, legally revoked their offer to sell by

informing the plaintiff of the sale to the other party. The agreed statement of facts sustains this conclusion. The actual purchaser was not obtained by the plaintiff. This is not a case in which the seller revoked the broker's listing in order to avoid the payment of commissions and then sold to a purchaser obtained by the efforts of the broker. A revocation in such circumstances is not effective to deprive broker of his commission. *Schostak* v. *First Liquidating Corporation* (1948), 320 Mich 406.

"The right of a broker to commission is fixed at the time of his discharge in good faith. It depends on whether he has done the thing he undertook to do before his authority was terminated. * * * As applied to the ordinary contract of employment to sell property, for which there is no consideration other than the commission to be paid the broker and which may be considered as a mere offer that does not become an enforceable contract until it is performed by the broker, the rule means that where the owner in good faith revokes the agency or authority or withdraws the offer before the broker procures a purchaser ready, willing and able to purchase on the owner's terms, the broker is not entitled to compensation for procuring the purchaser thereafter or to a commission on a subsequent sale by the owner.

"Conversely, the owner cannot defeat the right of the broker to a commission or other compensation by terminating the agency after the broker has procured a purchaser ready, willing, and able to buy the property on the terms suggested by the owner and has communicated that fact to the owner." 12 CJS, Brokers, § 66, p 150, quoted with approval in *Schostak* v. *First Liquidating Corp.* (1948), 320 Mich 406, 415.

Since the plaintiff failed to obtain a ready purchaser before his authority to sell the property was revoked, he is not entitled to a commission.

The judgment of the trial court is affirmed, and costs are awarded to appellees.

FITZGERALD and T. G. KAVANAGH, JJ., concurred.