KASHAT v. PRANGS

1. CONTRACTS—OFFER—REJECTION.
    A written offer to purchase land for $25,000 is rejected when
    the seller changes the figure on the form of offer to $28,500;
    such change is a counter-offer by the seller to the purchaser.

2. CONTRACTS—ACCEPTANCE—DEPOSIT WITH BROKER.
    Deposit by purchaser of $500 with a broker who was handling
    the negotiations for a sale of real property, when purchaser
    made a written offer to seller through the broker, could not
    bind the parties to a contract where the broker's contract
    provided that this deposit was given to the broker in con-
    sideration for his efforts to obtain seller's acceptance of
    purchaser's offer and the deposit could not supply the seller's
    acceptance.

3. CONTRACTS—OFFER—DEPOSIT—FINDINGS OF FACT.
    Finding of trial court that buyer's offer to buy land was accepted
    by seller and apparent finding that $500 deposit given by buyer
    to broker when he made the offer bound buyer and seller to an
    enforceable contract were clearly erroneous where the evidence
    showed that seller did not accept the offer as made but altered
    the price and another term on the form and returned it to
    buyer through the broker.

4. APPEAL AND ERROR—ERRONEOUS FINDING OF TRIAL COURT—COR-
    RECT DECISION.
    Judgment of trial court for specific performance of contract to
    sell land based on an erroneous finding that defendant accepted
    plaintiff's original offer to buy will not be reversed on appeal
    where it appears that a valid and enforceable contract had been
    formed by timely acceptance by buyer of seller's counteroffer.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3]  17 Am Jur 2d, Contracts §§ 39, 40.
[2]  17 Am Jur 2d, Contracts §§ 85, 92.
[4]  17 Am Jur 2d, Contracts §§ 40, 41.

Appeal from Macomb, Alton H. Noe, J.   Submitted Division 2 January 10, 1969, at Detroit. (Docket Nos. 3,921, 3,922.)   Decided February 25, 1969.   Leave to appeal denied July 8, 1969.   See 382 Mich 768.

Complaint by Sam S. Kashat against Milton Prangs, Genevieve Alcini, survivor of herself and William J. Alcini, Peter Cheli and Edith Cheli, for specific performance of a contract to sell land and damages. Judgment for plaintiff. Defendants appeal. Affirmed.

*Harry S. Huber,* for defendant Prangs.

*Katsoulos & Gillis,* for defendants Alcini and Cheli.

BEFORE: LESINSKI, C. J., and J. H. GILLIS and T. M. BURNS, JJ.

T. M. BURNS, J.   Defendants appeal from the circuit court's order of specific performance of a contract for the sale of land, entered in favor of the plaintiff, Sam Kashat.

Plaintiff had submitted on February 18, 1965, a written offer to purchase a ten-acre parcel of land on Van Dyke avenue in Washington township, Macomb county, from the defendant Milton Prangs for $25,000 cash.   Plaintiff gave the signed form and a $500 deposit check to the defendants' agent, Owen Kirkwood, a broker.   Defendant-seller Prangs crossed out the figure of $25,000 on the form and wrote in its place the figure of $28,500.   Prangs altered one other term on the form, changing the time for closing from 45 days to 30 days after de-

livery of abstract, and through his broker, Kirkwood, returned the altered form by mail to plaintiff who received this counter-offer on February 28, 1965.

Defendants contend on appeal that before the plaintiff accepted this counter-offer of the seller Prangs, the offer either expired or was revoked. On March 6, 1965, defendants Alcini and Cheli entered into an agreement with defendant Prangs for the sale of the disputed parcel at a price of $32,000.

The trial court concluded after the completion of the testimony that a binding contract existed between plaintiff Kashat and the defendant Prangs, and accordingly entered an order of specific performance, requiring the defendants to deliver title to Kashat upon the plaintiff's tendering of the agreed purchase price of $28,500.

Clearly the written change by the seller Prangs of the price term on the printed form from $25,000 to $28,500 rejected plaintiff's original offer and substituted a counter-offer by the seller to the plaintiff. *Thomas* v. *Ledger* (1935), 274 Mich 16, 21; *Seelye* v. *Broad* (1966), 2 Mich App 177. In this regard, the trial court's conclusion that the negotiation between these parties consisted simply of an offer by the plaintiff-purchaser accepted by the defendant-seller, is clearly erroneous.

Further, the deposit by the plaintiff of $500 with the broker at the time he made his original offer could not bind the parties to the contract. The printed broker's form contract, entered as an exhibit, states that this deposit was given to the broker in consideration for the broker's effort to obtain the seller's acceptance. The trial court apparently found that this $500 bound the parties to an enforceable contract, but this deposit could not supply the requisite acceptance by the offeree. The

seller having rejected plaintiff's offer to buy at
$25,000 and having returned a counter-offer to sell
at $28,500, it became necessary for the plaintiff-
buyer to give a valid acceptance before the offer
lapsed or was revoked.

The principal dispute presented at trial was
whether or not the plaintiff accepted the defendants'
counter-offer before the offer had either expired or
was revoked by the seller through his agent, Kirk-
wood, the broker. Plaintiff testified that, eager to
conclude the deal at the defendant Prangs' offered
price of $28,500, he signed and delivered in person
to Kirkwood within two or three days, the altered
form he had received on February 28, 1965. Plain-
tiff, not greatly skilled in the use of written English,
testified that he was unwilling to complete the trans-
action by mail because he was unsure of his ability
to communicate by writing, and made a special trip
from his home in Detroit to Kirkwood's office in
Romeo, Michigan, in order to deliver the signed form
personally. Owen Kirkwood testified, on the other
hand, that he received the form in question in the
mail on March 13, 1965, several days after he had
informed the plaintiff by phone that the offer was
revoked and that the land had been sold to the de-
fendants Alcini and Cheli. Unfortunately, the trial
court did not resolve this factual dispute.

However, the trial judge, in giving his opinion,
observed candidly on the record that it was the
seller's agent, the broker Kirkwood, who "played
it cozy, both ends against the middle, held on all
he could to see what deal could be made". From
our study of the record we conclude that the evi-
dence preponderates heavily in favor of the plain-
tiff's testimony that he returned the signed forms
personally within three days to Kirkwood. There
fore, although the trial court's particular finding of

an acceptance by the defendant-seller of the purchaser's original offer was not correct, we think the court was entirely correct in finding that there was a meeting of the minds between the parties and that a valid and enforceable contract had been formed. The Michigan Supreme Court has frequently stated that reversal will not be granted where a trial court has reached a correct conclusion based on an erroneous finding. *County of Ottawa* v. *Zwagerman* (1924), 229 Mich 501; *Langschwager* v. *Pinney* (1958), 351 Mich 473; *Straith* v. *Straith* (1959), 355 Mich 267.

We are convinced that the plaintiff is entitled to specific performance and the trial court's judgment is affirmed. Costs to appellee.

All concurred.