GREATER BLOOMFIELD REAL ESTATE CO v BRAUN

FROLING v BRAUN

1. TRIAL—DE NOVO REVIEW—FINDINGS OF FACT—EQUITABLE PROCEED-
   INGS—PERSPECTIVE—CASUAL REASSESSMENT.

   Appreciation of a trial court's perspective prohibits casual reas-
   sessment by the Court of Appeals of the facts found in an
   equitable proceeding even though its review is de novo.

2. CONTRACTS—OFFEROR—EFFECTIVENESS OF COMMUNICATION—RISK—
   ACCEPTANCE—INDICATED MANNER.

   One who offers to enter into a contract takes the risk as to the
   effectiveness of communication if the acceptance is made in the
   manner either expressly or impliedly indicated by him.

3. CONTRACTS—PURCHASER'S OFFER—CONDITIONAL OFFER—FINANCING
   CONDITION—ACCEPTANCE—OPTIONS.

   A purchaser under a contract for the sale of land whose offer to
   purchase is conditioned upon his ability to obtain financing is
   required to seek financing and if successful is bound to pur-
   chase; therefore, acceptance of such an offer creates a contract
   and not merely an option to purchase.

4. TENDER—CONTRACTS—SPECIFIC PERFORMANCE—DEFENSES—FAILURE
   TO TENDER—FULL PERFORMANCE—FUTILE GESTURES.

   Specific performance of a contract will not be granted unless a
   party seeking it has tendered full performance, but failure to
   tender may not be used as a defense to specific performance
   where one party makes it obvious that tender would be a futile
   gesture.

5. BROKERS—REAL ESTATE—CONTRACTS—AGENCY—IMPROPER ACTIVITY
   —COMMISSIONS—STATUTES—SELLER'S DEFENSES—PURCHASER'S
   ACTIONS.

   A real estate broker may be required to forfeit his commission for

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 703.
[2] 17 Am Jur 2d, Contracts §§ 43, 44, 48.
[3] 17 Am Jur 2d, Contracts §§ 39, 62–66.
[4] 17 Am Jur 2d, Contracts §§ 356, 358–360.
[5, 6] 12 Am Jur 2d, Brokers §§ 157–243.

improper activity during the period of his agency but a broker who offered a part of his commission to an employee of a purchaser for helping to arrange the sale and who failed to deposit money received as a deposit on the sale in a separate custodial or trust fund account as required by statute should not be denied a judgment awarding him the commission called for in the agreement because it was not improper for him to give part of his commission to the other party, since this aids rather than harms the principal's interests, and his noncompliance with the statute did not cause the principal any loss; a seller cannot use his broker's failure to comply with statutory directives as a defense to the purchaser's action (MCLA 451.213[i][4]).

6. BROKERS—REAL ESTATE—CONTRACTS—FEE-SPLITTING—COMMISSIONS —PURCHASER'S INTERESTS—TEMPTATION TO SACRIFICE—ACTUAL INJURY—LABELS.

A real estate agent may be denied his compensation for engaging in fee-splitting and it is enough to show that the agent's actions presented the temptation to sacrifice his principal's interests; it is not necessary to show actual injury to the principal but more than merely labeling an arrangement as fee-splitting is necessary to defeat a broker's claim.

Appeal from Oakland, Robert B. Webster, J. Submitted June 6, 1975, at Detroit. (Docket Nos. 18376, 18391.) Decided September 10, 1975.

Complaints by the Greater Bloomfield Real Estate Company and William P. Froling against Joseph A. Braun for specific performance of a contract for the sale of land and payment of a broker's commission. Judgments for plaintiffs. Defendant appeals. Affirmed.

*Philip E. Rowston,* for plaintiff Greater Bloomfield Real Estate Co.

*John H. Brennan,* for plaintiff Froling.

*Darden, Neef & Heitsch,* for defendant.

Before: Danhof, P. J., and R. B. Burns and
R. M. Maher, JJ.

R. M. Maher, J. Defendant Braun is the owner
of property in Bloomfield Hills. Plaintiff Froling
sought specific performance on his contract with
Braun for the sale of the property. Plaintiff
Greater Bloomfield Real Estate Company brought
suit for a ten percent broker's commission it
claims was earned by bringing about the contract
with Froling. The suits were consolidated and a
bench trial was held. Defendant Braun appeals
from judgments in favor of each plaintiff.

An employee of Greater Bloomfield, Burton Dis-
ner, approached Braun in April of 1971 and in-
quired about the sale of his property through
Greater Bloomfield. Though Braun was unwilling
to give Greater Bloomfield an exclusive listing, he
did permit Greater Bloomfield to show the prop-
erty and receive offers. The price of $185,000 on a
land contract was given. Greater Bloomfield sent
out flyers describing the property, and one was
sent to Froling's assistant, Gary Walker. Several
prospects, including Froling, inspected the prop-
erty.

On June 4, 1971, Froling submitted, through
Greater Bloomfield, the offer of Joancar Invest-
ment Company to purchase the property for $185,-
000 on a land contract. These were the terms
Braun had originally mentioned to Disner. Accom-
panying the offer was a $5,000 check from Joan-
car, a corporation Froling controlled.

Braun rejected the offer, telling Disner that he
no longer wanted the sale to be on a land contract.
On June 10, 1971, Froling made an offer of $165,-
000 cash in his own name. The offer, transmitted

through Disner to Braun, required Froling to immediately apply for a mortgage and contained a condition that inability to obtain necessary financing within 30 days would terminate the agreement. The offer stated that the broker, Greater Bloomfield, was authorized to hold a $5,000 deposit and apply it to the purchase price. The check of Joancar that accompanied the previous offer had not been returned to Froling and at that time Froling did not present his own check.

Disner brought the $165,000 written offer to Braun, who changed the amount to $185,000, initialed the change, and then signed the "Acceptance of Offer" section. That section contained a provision for a ten percent broker's commission to be paid by the seller. Braun claims that he instructed Disner that the offer should be returned the following day, June 11. Other testimony contradicted this, and the trial judge found that the instruction was not given.

On June 14, 1971, Froling applied for mortgage financing through Detroit Bank & Trust, and on June 15, he told Disner that he accepted Braun's counter-offer. The section of Froling's original offer labelled "Purchaser's Receipt of Original Offer" was signed by Froling. Disner testified that on June 16, he told Braun over the telephone that Froling had accepted the counter-offer. Braun claims he first heard of the acceptance through Froling's assistant, Walker, in early July.

Detroit Bank and Trust, after appraising the property, informed Froling on July 1 that it had approved the mortgage. A week later Froling notified Disner of this. On July 3, Braun told Froling's assistant, Walker, that the deal was off. Later in July, he refused to hand over to Disner the abstract of title, telling Disner that there was no

deal and that the matter was being handed over to his attorney.

We agree with the trial judge that a contract for the sale of the property was formed by Froling's communication of acceptance of the counter-offer to Disner. The trial court found no instruction by Braun as to when the counter-offer had to be accepted. Even though our review of equitable proceedings is *de novo,* appreciation of the trial court's perspective prohibits our casual reassessment of the facts. *Stachnik v Winkel,* 394 Mich 375; 230 NW2d 529 (1975), *Dassance v Nienhuis,* 57 Mich App 422; 225 NW2d 789 (1975). The record provides us with no solid grounds for disagreement with the trial court's finding that the instruction, requiring acceptance on June 11, was not given to Disner.[1]

The evidence is conflicting on when Braun learned of Froling's acceptance of the counter-offer. Nevertheless, a delay by Greater Bloomfield in notifying Braun of Froling's acceptance does not affect a contract between Braun and Froling. Braun used Disner to transmit the offer to Froling. Absent any contrary indications from Braun, Froling was able to accept in the same manner and the contract was then formed. "We are of the opinion that the authorities are clear that 'the offerer takes the risk as to the effectiveness of communication if the acceptance is made in the manner either expressly or impliedly indicated by him.'" *Butler v Foley,* 211 Mich 668, 673; 179 NW 34 (1920), *Kashat v Prangs,* 16 Mich App 76; 167 NW2d 603 (1969); see 1 Corbin on Contracts § 67, p 282.

---

[1] Even a finding that the instruction had been given to Disner would not necessarily mean that Froling was unable to accept after the time limit laid down by Braun. Secret instructions are usually without effect when a third person relies upon an agent's apparent authority. See 1 Mecham on Agency (2d ed), §§ 710, 2397.

Froling failed to deposit $5,000 of his personal funds with Greater Bloomfield when he made the offer on June 10. Braun argues that this constitutes lack of consideration, but we fail to attribute this significance to the deposit. The consideration given for Braun's promise to sell was Froling's promise to purchase, subject to the condition regarding financing. If the deposit had some importance to the counter-offer and acceptance, it seems sufficient that the $5,000 check of Joancar remained in the hands of Braun's broker at the time of acceptance.[2] On this matter the trial court stated:

"The fact that the check was drawn on Joancar Investment Company when the offer of June 10 was executed by Froling in his personal capacity again I do not see that as a matter of law continuing that deposit would in any way affect this transaction because the check was presented in this initial manner.

"Mr. Froling could have directed funds from any number of sources. He could have presented a cashier's check. Any other type of funds could have been presented for deposit, and the simple fact that it was a Joancar Investment Company check does not impress me as a significant fact in this transaction."

Defendant, Braun, has provided us with no basis for disagreement with the trial court's statement.

Braun's final attempt to show that there was no contract for the sale of the property is the assertion that the provision for obtaining financing made the agreement merely an option. This interpretation of the agreement is not acceptable. By

[2] Greater Bloomfield's failure to deposit the Joancar check in a trust account, as required by MCLA 451.213(j); MSA 19.803(j), is of no concern on this particular point. Surely a seller cannot use his broker's failure to comply with statutory directives as a defense to the purchaser's action.

the agreement's terms, it gave no option to the purchaser. He was required to seek financing, and if his efforts proved successful he was bound to purchase. Inability to obtain financing terminated the agreement, but we fail to see how this condition caused the agreement to be an option.

We are referred by defendant to numerous cases which have held that specific performance will not be granted unless the party seeking it has tendered full performance. Equally well-established, however, is the rule that where one party makes it obvious that tender would be a futile gesture, failure to make a tender may not be used as a defense to specific performance. *Weinburgh v Saier,* 303 Mich 640; 6 NW2d 921 (1942), *Hanesworth v Hendrickson,* 320 Mich 577; 31 NW2d 726 (1948), *Keller v Paulos Land Co,* 5 Mich App 246; 146 NW2d 93 (1966). Here, where Braun made his unwillingness to go through with the sale well known to the other party, he should not be allowed to assert the defense of lack of tender. We therefore agree with the trial court's judgment awarding specific performance on the contract.

Defendant, Braun, also contends that Greater Bloomfield's improper conduct during the transaction in question should preclude a judgment awarding Greater Bloomfield the ten percent broker's commission called for in the agreement. Disner, Greater Bloomfield's employee, agreed to pay Walker, Froling's employee, $3,500 of the commission Greater Bloomfield would receive from a sale to Froling. Greater Bloomfield also failed to comply with MCLA 451.213(j)(4); MSA 19.803(j)(4), which requires a real estate broker to deposit money received in a separate custodial or trust fund account. Like the trial court, we "have great discomfiture at the conduct of salesman Disner".

Nevertheless, we find no error with the judgment in favor of Greater Bloomfield. The failure to follow the statutory provisions regarding deposit of funds should not bar recovery of an earned commission. Braun makes no allegation that his broker's noncompliance caused him any loss.

The question of sharing a commission goes beyond the statutory provisions on real estate brokers[3] and requires consideration of broad principles of agency law. The leading case in Michigan on "fee-splitting" is *Sweeney & Moore, Inc v Chapman*, 295 Mich 360, 363; 294 NW 711 (1940), which held that a broker may forfeit his commission for improper activity during the period of his agency:

> "The general rule is that a broker may forfeit his right to compensation by misconduct, breach of duty, or wilful disregard, in a material respect, of an obligation imposed upon him by the law of agency. A corollary of this rule is that 'the law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal.' *Hogle v Meyering* (syllabus), 161 Mich 472. An agreement between real-estate brokers, representing different principals, to pool or divide their commissions, is a breach of good faith toward their principals and void as against public policy. Such an agreement deprives the brokers of their right to compensation unless both principals consent thereto. This rule applies even though the principals themselves finally conclude the sale."

We are, of course, in complete accord with the sound policy expressed in *Sweeney & Moore, Inc.* That case involved a "classic" instance of "fee-splitting", in which the purchaser's broker and the seller's broker agreed to divide their commissions.

---

[3] Because both Disner and Walker were licensed brokers, there is no violation of MCLA 451.213(i); MSA 19.803(i).

The evil with this sort of arrangement is the obvious temptation it presents to the agents involved to sacrifice the interests of their respective principals. By sharing in the other agent's compensation, an agent's benefits no longer coincide with his principal's success in a venture, and so he may be inclined to disregard the best interests of his principal.

All this, however, is inapplicable to the case before us. Walker had no commission from Froling to share with Disner. The split between them was strictly "one-way". We cannot see how this placed a temptation before Disner to sacrifice Braun's interests. If anyone is to complain of the arrangement between Disner and Walker, it is Froling, not Braun. See *Ranney v Donovan,* 78 Mich 318; 44 NW 276 (1889).

The text writers have seen that arrangements like the one between Disner and Walker provide Disner's principal no reason to complain. Professor Seavey states:

"It is not improper for an agent to act for the adverse party in a transaction by assisting him to secure the money to make a purchase from the principal, or to complete his title to property to be sold to the principal. *Likewise, it is not improper for him to give part of his commission to the other party, since this aids rather than harms the principal's interests."* Seavey, Law of Agency, § 149, p 246. (Footnote omitted.) (Emphasis supplied.)

Professor Mecham is in agreement. See 1 Mecham on Agency (2d ed), § 1590. For an agent to be denied his compensation, it is enough to show that his actions presented the temptation to sacrifice his principal's interests. It is not necessary to show actual injury to the principal. 1 Mecham on

Agency (2d ed), § 1589. Nonetheless, more than merely labelling an arrangement as "fee-splitting" is necessary to defeat a broker's claim for his commission. Since it has not been shown that Disner placed himself in a position that at least offered the potential for compromising Braun's interest, there is no reason to deny Greater Bloomfield its commission.

The judgment of specific performance in favor of plaintiff Froling and the judgment awarding Greater Bloomfield its commission are affirmed. Costs to plaintiffs.