ANDREW ROSE, Plaintiff,

v.

ROY J.D. HALL JR., an individual; HALL & ASSOCIATES, a professional corporation; and DOES I through X, Defendants.

High Court of American Samoa
Trial Division

CA No. 29-79

April 30, 1980

MURPHY, Associate Justice.

This matter came on for trial to the Court, commencing April 8, 1980. The issues were defined by the pleadings. Plaintiff–Counterdefendant, Andrew D. Rose (hereinafter referred to as Rose) testified and introduced evidence. Defendant–Counterclaimant, Roy J.D. Hall, Jr. (hereinafter referred to as Hall) testified and introduced evidence. The parties were the only witnesses. Both parties rested, the matter having been fully submitted and taken under advisement April 10, 1980.

During the course of the trial, Rose withdrew his claim against Defendant, Hall and Associates, on all claims for relief except that numbered fifth in the complaint. The Court granted Hall's motion to dismiss Plaintiff's fifth claim for relief as to both Hall, and Hall and Associates, we also granted Hall's motion to dismiss as against Hall, the fourth, fifth, and sixth claims for relief as numbered in the complaint. The Court took under advisement Hall's motion to dismiss Rose's remaining claims for relief. The Court also took under advisement Rose's motion to dismiss Hall's counterclaim. The following findings of fact, conclusions of law, opinion, and order, are dispositive of all issues and matters under advisement. The findings of fact are made pursuant to Rule 52, Fed. R. Civ. P.

## FINDINGS OF FACT

In 1976 Rose ws employed as a law clerk for Justice Leslie N. Jochimsen in the High Court of American Samoa, at a salary of $16,000–$18,000 per year. His previous work experience in the legal profession had been as a clerk, earning a relatively insignificant salary. Hall was in private practice in American Samoa as a sole practitioner. His practice was relatively successful with increasing earnings. In 1976, he earned a net income of approximately $46,000. During November, 1976, Hall and Rose agreed to form a partnership for the practice of law, commencing January 1, 1977, and to continue for a term of three years. The parties commenced practice as Hall & Rose. After commencement of the partnership operations, Hall became dissatisfied with Rose for the following reasons, among others:

1. Rose experienced marital problems in that his wife was discontent in American Samoa. In an effort to appease her discontent, Rose took her on trips to the United States and New Zealand at firm expense and began spending more time during business hours with her and devoted less time to the office. He became unable to devote needed time to the office.

2. Rose advised some of the firm's business clients that it was necessary and customary to have monthly director's meetings at which he acted as chairman. The clients complained about being billed for his attendance at those meetings.

3. Clients complained about Rose's billings insofar as they did not feel he was putting in the hours reflected in the bill.

4. Rose suggested that Hall & Rose invest in business opportunities obtained as a result of information gained through representation of certain clients, to the probable disadvantage of the client.

5. Rose did not produce clients as he had promised.

In October, 1977, Hall announced his desire to terminate the partnership. Rose consented to the dissolution provided the fees owed could

be collected and divided between them. Hall and Rose commenced negotiation of the terms of the dissolution which included, *inter alia*, division of fees, allocation of accounts payable, division of assets and liabilities, and relocation money for Rose and his family.

The terms of the division of assets and liabilities were never agreed upon or reduced to writing.

The partnership practice terminated in November, 1977.

Rose returned to the mainland in January, 1978, and obtained a job with his present employer, General Dynamics, at approximately $22,000 per year. He presently earns $27,500 per year. His income from Hall & Rose in 1977 was $37,658.00, plus reduced rent for family housing and the trips mentioned above.

Subsequent to the termination of the partnership, Hall paid Rose $3,000. Hall also paid income taxes due the American Samoa Government by Rose in the amount of $5,178.30 when the American Samoa Government filed a lien on both partners' bank account.

Both Rose and Hall claim they are entitled to damages as a result of the wrongful acts of the other, and have presented detailed accountings in support of their claims.

## CONCLUSIONS OF LAW

1. The evidence presented at trial by both parties was sufficient to constitute the accounting to which both parties claim to be entitled.

2. Because we have found that the original oral partnership agreement entered into between the parties was terminated by mutual consent, neither party breached that agreement.

3. Because we have found the parties never agreed as to the terms of the partnership dissolution agreement, there was no legally enforceable agreement which could be breached.

4. Plaintiff had no right to rely on the alleged false representations made by Defendant to him. Because we have found that the Defendant did not make any false representations of fact, and because we have concluded Plaintiff had no right to rely on the misrepresentations even if they were made, Plaintiff does not have a valid claim for relief for fraud.

5. There was insufficient proof to show by a preponderance of the evidence that Hall, or Hall & Associates, a professional corporation, converted any assets of the partnership of Hall & Rose.

6. Because we have found neither party committed acts of extreme and outrageous conduct, either intentionally or recklessly, neither party has a claim for relief for infliction of severe emotional distress.

7. Although Rose did misrepresent material facts to Hall in the formation of the partnership of Hall & Rose, Hall did not have a right to rely on those misrepresentations.

8. Because parties to judicial proceedings have an absolute privilege to publish defamatory matter concerning another in communications preliminary to a judicial proceeding and during the course of the proceedings, and because there was no evidence of unpriviledged communications, Hall does not have a claim for relief against Rose for defamation.

## MEMORANDUM OPINION

There is little, and in some cases no statutory or case law on some of the areas of law involved in this case. In such situations, this Court will normally refer to Federal statutory law, and in its absence, Federal common

law. In particular, partnership law is of the nature that there is little Federal law on the subject, so, as a necessity, state common law was turned to in some issues. Most states have adopted the Uniform Partnership Act and have been operating under that act or other statutory acts for many years. As a result of this, the cases cited in this opinion are often very old. Nevertheless, they do still reflect the common law of partnerships as best we could determine it and do produce an equitable result.

## BREACH OF CONTRACT FOR THE FORMATION OF THE
## PARTNERSHIP OF HALL & ROSE

Since partnerships are formed by the mutual agreement of all partners, they may be altered, modified, or dissolved by like agreement. Meyer v. Sharp, 341 Ill.App. 431, 94 N.E. 2d 510 (1950). The intent to dissolve a partnership by mutual consent may be evidenced by the act of the partners in the absence of formal articles of dissolution. Cave v. Cave, 81 NM 797, 474 P.2d 480 (1970). The dissolution of a partnership by mutual consent is not restricted to partnership by will. Notwithstanding that a time for the dissolution of the partnership may be fixed by the partnership articles (or in this case by oral agreement), the partners may by their mutual assent dissolve their relation by agreement before such time, and this may be accomplished either by an express agreement or by words and acts implying an intention to dissolve the partnership. See Evatt v. Campbell, 234 SC 1, 106 S.E.2d 447 (1959). And when a partnership is terminated by the mutual consent of the partners, no damages lie for the termination thereof, Meyer v. Sharp, 341 Ill.App. 431, 94 N.E.2d 510 (1950).

## BREACH OF THE CONTRACT TO DISSOLVE THE
## PARTNERSHIP OF ROSE & HALL

Partners may agree upon terms of a dissolution differing from those originally provided in the partnership agreement, but where the partnership agreement and dissolution agreement conflict, the latter controls. Guenther v. Kutz, 270 Pa. 144, 112 A. 919 (1921). However, in agreements to dissolve partnerships, as with all contracts which are later to be reduced to writing, there must be agreement as to all the terms of the contract. Even when there is no agreement as to all the terms, the parties may proceed with their negotiations as to these other terms, without any new and distinct reference to the terms to which they have alredy assented. There is no contract until agreement is reached on all terms, the preliminary and partial agreements being expressly or impliedly incorporated into the final offer and acceptance. Purrington v. Grimm, 83 Vt. 466, 76 A. 158 (1910). While it is possible for parties to make an enforceable contract binding them to prepare and execute a subsequent documentary agreement, for it to be effective it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. Shepard v. Carpenter, 54 Minn. 153, 55 N.W. 906 (1860). That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed upon, no contract has yet been made; and the so-called "contract to make a contract" is not a contract at all. Canadian Nat. R. Co. v. George M. Jones Co., 27 F.2d 240 (6th Cir. 1928); Transamerica Equipment Leasing Corp. v. Union Bank, 426 F.2d 273 (9th Cir. 1970); National Tea Co. v. Weiss, 341 F.2d 331 (7th Cir.).

In this case we have found that the parties did not reach a final dissolution agreement. Although Rose repeatedly insisted at trial that all the terms of the dissolution agreement were settled and only the monetary

20

values need be applied to formulae agreed to by both parties, Hall's testimony was to the contrary, and quite frankly, after hearing all the evidence, we found Hall's testimony to be consistent with the uncontested fact, and therefore more credible. Because we have found there was no separate dissolution agreement, no damages lie for any breach thereof.

## FRAUD

Because we have found that Hall made no false representations, we will not discuss Rose's claim for relief based on fraud.

In regard to Hall's claim for relief for fraud, the law generally requires good faith in every business transaction, and does not allow one intentionally to deceive another by false representations or concealments, and if he does so, it will require him to make good such representations, but it does not make one party to a contract responsible in damages for every unauthorized, erroneous, or false representation made to the other, although it may have been injurious.

We have been unable to find any prior statements of the elements required to prove fraud in this jurisdiction. Having reviewed the common treatises on the subject and the recent federal cases, we hold that for a person to recover for fraud in American Samoa he must prove the following: (1) that there was a material representation of fact, (2) that the representation was false, (3) that the representatin was made with the intent to deceive, (4) that the representation was relied on by the person complaining, (5) that the complainant had a right to rely on the representation, and (6) that the complainant was injured by his reliance.

Hall's case turns on whether or not he had a right to rely on Rose's misrepresentations. This hinges on whether or not Hall had a duty to investigate the representations made to him. See McCarthy v. Cahill, 249 F.Supp. 194 (D. DC 1966). It seems to us that the only factual misrepresentations Rose made were his statements that he had previously been an associate with a prestigious La Jolla law firm and that he would be able to produce new clients for the firm from his "contacts." Where truth or falsity of the representation is obvious on its face, or a mere cursory glance would have revealed its falsity, a party would not necessarily be justified in relying upon the representation. McCarthy v. Cahill, supra. In this case, Hall could have investigated this statement by asking for references. The representations as to the number of clients Rose would bring in, etc., are not the kind which are actionable as they are only ·pinions. Jt. Holdings & Trade Ltd. v. P.J. Brennan, Inc. of Samoa, 4 ASR 812 (1974). Furthermore, once Hall became aware of the misrepresentations, he was no longer entitled to rely on them and thus cannot recover for lost profits incurred thereby. Magna Weld Sales Co., Inc. v. Magna Alloys and Research Pty.Ltd., 545 F.2d 668 (9th Cir. 1976). In order to assess actual damages under those circumstances we would, of necessity, be required to enter the realm of speculation, which we cannot do.

In summary, then, it appears to us that what happened is Rose repeatedly mislead Hall and Hall relying on the false representations entered into a partnership agreement with Rose. Because we have held one ·of the elements for actionable fraud in this territory is the right of the complainant to rely on the misrepresentation, and we have found that Hall did not have such a right,· he cannot recover for fraud. This leaves Hall in the position of having contracted with someone who failed to meet Hall's hopes and expectations, and for this there is no recovery. Jt. Holdings, supra. Regrettably for Hall, he entered into a bad business deal and is now left holding the bag.

## CONVERSION

Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattles belonging to another, or the alteration of their condition, or acting to the exclusion of the owner's rights, or any unauthorized act which deprives any owner of his property permanently or for an indefinite time. Quaker Oats v. McKibben, 230 F2d 652 (9th Cir. 1956).

In this case, Rose complains that some of the assets of Hall & Rose (mostly office equiptment) were converted to the use of Hall & Associates. After hearing the testimony of both parties and reviewing the accountant's documents submitted by them, we are not convinced by a preponderance of the evidence that any assets of Hall & Rose were converted by Hall & Associates or anyone else.

## INFLICTION OF EMOTIONAL DISTRESS

Both parties have made claims that the acts of the other have caused emotional distress. After reviewing the laws of the various states, we are persuaded that the Restatement of Torts, Second, contains a statement which will best protect the interests of the people residing in American Samoa. We adopt that portion of Section 46 of the Restatement of Torts, Second, that is necessary to resolve the dispute in this case. Namely:

> One who by extreme nad outrageous conduct intentionally
> or recklessly causes severe emotional distress to
> another is subject to liability for such emotional
> distress, and if bodily harm to the other results
> from it, for such bodily harm.

Rose complains that the outrageous conduct committed by Hall was, inter alia, Hall's failure to accept collect overseas telephone calls from Rose, and failure of Hall to pay Rose payments required by the alleged dissolution agreement. Rose admits that failure to make payments required by contract is not sufficient to meet the requirements of this court. He argues that he purchased a home in Southern California, the loan payments for which were in excess of $700 per month, and without the payments from the alleged dissolution agreement he nearly went into default on the loan, thereby suffering severe emotional distress. The acts complained of here are not sufficient to meet the requirements of this tort. See generally Prosser, Law of Torts, 4th ed. Furthermore, we note no one forced Rose to move to Southern California and buy an expensive home. He admits to having left American Samoa with over $20,000 in cash, having come to this Territory with approximately one-tenth that amount. To complain that the emotional distress caused him by Hall failing to make payments on the alleged dissolution agreement goes too far for us. If it were appropriate, we would find that Mr. Rose caused his own emotional distress by getting himself into the predicament.

Hall's claim of outrageous conduct on the part of Rose is that Rose left the Territory without paying his taxes. As a result of this, a tax lien was placed on the accounts of Hall & Associates, thereby causing Hall severe emotional distress. Other conduct alleged to have caused Hall emotional distress was the collect telephone calls made to him by Rose from California, one of which is averred to have been made under the ruse of being an emergency call from a relative.

After reviewing these facts, even in the light of the circumstances of the time, we do not find the acts to be sufficiently outrageous to warrant recovery for infliction of emotional distress.

22

## DEFAMATION

Because of the factual circumstances surrounding Hall's claim against Rose for defamation, we need not address the elements required for proof of this tort, nor need we address the defamatory character of the allegations made by Rose in his complaint and while testifying as a witness in this case. Suffice it to say, all or nearly all jurisdictions provide the parties to a law suit an absolute privilege to publish defamatory matter concerning another in communications preliminary to a judicial proceeding and during the course of the proceedings. After reviewing the law in several jurisdictions we are persuaded that the statement of the privilege made in the Restatement of Torts, Second, section 587, is as good as any, and we adopt it as the law on this point in this Territory. Had Rose published the defamatory matter at times not related to this litigation, or had he published the matter excessively, it would be a different story. But, having reviewed the evidence, we find the preponderance of the evidence is that no such unprivileged communications were made.

## ORDER

IT IS ORDERED that judgement be entered in accordance with the findings of fact and conclusions of law set forth above.